## J. M. Rucker et al. v. S. M. Dyer, Adm'r.

1. Descent and distribution—Real and personal estate.—The administrator deals with the personal estate, which is the primary fund for the payment of debts, and has nothing to do, in the first instance, with the real estate, which descends, upon the death of the decedent, to his heirs, whose title can be divested only in the mode and manner, and for the purpose specially provided in the statute.

2. Probate court—Bond of administrator—Sale of real estate.—The bond of an administrator under the law of 1857, does not apply to real estate, and is no security for the proper application of proceeds of land, sold for the payment of debts.

3. Administrator—Bond for sale of real estate.—The act approved November 20th, 1858, by which it is provided, that whenever the probate court shall order a sale of land for the payment of debts under Rev. Code, 446, art. 89, it shall be the duty of the court to require the executor or administrator, prior to the sale of said real estate, to execute a bond with good and sufficient security for the faithful application of the proceeds of such sale, according to law, applies to all executors and administrators without exception.

4. Same—Sheriff—Administrator.—On application of D., sheriff of Yazoo county, appointed administrator of the estate of S., deceased, by the probate court of said county, under Rev. Code, 440, art. 68, the said court declared said estate insolvent, and ordered and decreed that certain lands, owned by said decedent at the time of his death, should be sold for the payment of debts. In pursuance of the decree of sale, the administrator sold the same to R., on credit, with bond and security for the purchase money. D. entered into no bond prior to the sale of said land, for the faithful application of the proceeds thereof, according to law. The confirmation of said sale was resisted by R., on the ground that he acquired no title to the lands by the sale, and the title remains in the heirs. The objection was overruled, and sale confirmed by the court below. Held: The ground of resistance was good, and for this reason the court below erred in confirming the sale.

Assignment of errors:

1st. The order or judgment for the sale of the lands, did not require the administrator to give bond and security, as required by the law of November 30, 1858, (Acts, 187, § 1,) and was illegal and void.

2d. The administrator did not give the bond and security before the sale of the land, as required in such case, by the law of November 30, 1858 (Acts, 187, § 1), and the sale was, therefore, illegal and void.

3d. The administrator did not advertise, by posting the sale of the lands, as required by the order of the court, in that behalf, nor as required by the law in such case, and the sale was illegal and void.

4th. The administrator sold the entire lands of decedent, including the homestead decreed to the minor children of decedent, under one general sale.

*Hudson & Nye*, for plaintiffs in error.

On 1st and 2d assignments of error, cited Acts 1858, 187; 26 Miss., 646; S. C. 27, 52; 26 Miss., 206; 7 S. & M., 454; 1 ib., 351; 41 Miss., 460; 2 S. & M., 326; 12 ib., 9; 34 Miss., 304; Rev. Code, 1857, 438, art. 63; ib., 440, art. 68; 37 Miss., 17; 26 Peters, 25; 4 Wheaton, 77; Hamilton & Young v. Lockhart et al.; Hare et al. v. Houghton et al, Opinion Book, June term, 1866.

On 3rd assignment of error, cited 26 Miss., 645; S. C., 27, 52; 26 ib., 206; 12 S. & M., 9; 34 Miss., 304; Rev. Code, 1857, 446, art. 90; 2 Hamr., 231; 1 Leigh, 231; 12 Ala., 617; 2 Carter, 649; 2 N. H., 194; 40 Miss., 211; 6 N. H., 194; 7 Conn., 505; 6 N. H., 271 (3d ed., 178); 40 Miss., 239.

On the 4th assignment of error, cited 28 Miss., 113; 27 ib., 71; 38 ib., 200; 40 ib., 718; 34 ib., 304; 24 ib., 283; Blackwell on Tax Titles, 328; 13 Ill., 253; 9 Ohio, 43; 32 Maine, 394; 37 Miss., 71; 38 Miss., 113; 37 ib., 17; 39 ib., 467.

*W. P. Harris*, on same side.

The principal question in this cause arises on the construc-

tion of our laws, on the subject of administration of estates. In this case, the sheriff of the county as administrator, by order of the probate court, sold the realty of the intestate to pay debts, and the sale was made without giving the bond required by the act of 1858. Acts 1858, p. 187. The order directing the sale did not require the bond to be given, and obviously proceeded on the hypothesis that the sheriff, acting as administrator, was not required to give bond.

The code provides, generally, that administrators shall give bond for the performance of their ordinary duties. This bond is measured by the amount of the personalty, as the administrator has sought to do with the realty, except as he may be ordered by the probate court in the exercise of a limited jurisdiction. The same statute dispensed with bond, on the sale of real estate, which aforetime was required, and at p. 440, providing for the appointment of the sheriff to administer estates, declares that he shall not give security for his faithful administration. These words, of course, are not more comprehensive than the words, "shall faithfully, truly, and promptly perform all the duties required by law," as found in the form of the bond required by the statute, Rev. Code, 438.

Now, it is manifest, that unless the sheriff had been excepted from the general law, by express words, he would be required to give security as other administrators. He is bound to take the oath of office prescribed (p. 438), because the execution of the bond would include the oath.

All that relates to administrators generally, will, therefore, on obvious rules of construction, apply to the sheriff except where he is expressly excluded, or a different rule is plainly marked out for him. He is allowed ten per cent., and is taxed with no costs. But it is plain he must return an inventory and render accounts.

There is, therefore, no ground for controverting the proposition that all general laws relating to the administrator of estates apply to sheriffs, unless they are expressly excepted from their operation with this principle, in operation, the

matter stood under the Code of 1857. No administrator being required to give bond on the sale of real state, the sheriff of course, was included.

The act of 1858, however, changed the law in this respect In terms it applies to all administrators and executors, and directs that in sales of land by them under Rev. Code, 446, art 89, bond before sale, shall be required of the administrator. There can be no doubt, that in sales under that particular article, sheriffs are included, unless we hold that the term administrator does not embrace him.

It may be said, however, that the act of 1858 does not alter the law as to sales under art. 99, p. 449, relating to sales of lands of insolvent estates, and that no administrator is required to give bond under that article, and of course the sheriff would likewise be exempt.

The answer to this proposition is, that art. 89 governs art. 99. Art. 89 refers, it is true, to sales of lands on a reported deficiency of personalty; but this is substantially the same thing as total insolvency, and the legislature obviously meant, in modifying art. 89, to intend the modification of all parts of the law, which it plainly controls. There can be no difference between the case of a partial and total insolvency, as the principle which shall govern the sale of the land. In both cases it is sold for the same purpose, and the proceeds go to the same parties. It is a sale of lands to pay debts in both cases, and we must suppose that the legislature designed to include both in the act of 1858.

The proceedings in case of insolvent estates demanded a separate section of the chapter, because the mode of distribution of the estate was different; but where the section comes to speak of the sale of lands, it refers to the art. 89, merely to indicate that there is no difference in the proceeding in that respect. It is impossible to conceive that the legislature deemed a bond necessary as to estates partially insolvent, and not necessary as to those where there was an insolvency. In one case the creditor gets his whole debt; in the latter he gets less; but this seems to be no reason for not equiring a bond in the latter case.

There is no sound argument to be based on the idea that the code designed by the exemption from the general and ordinary administration bond, to exempt the sheriff from anything else which might then be required or might thereafter be required of administrators; and though we might say that the same reason which induced the legislature to exempt him from the ordinary bond, ought to have induced his exemption from the real estate sale bond., yet the legislature has not seen fit to make any exception in the act of 1858. We might with equal propriety urge that, as he was forced to take the administration, he ought not to be required to account.

*Garnet Andrews, Jr.*, for appellee.

The first, second, third, fourth, and fifth assignments of error (and perhaps the seventh and eighth, which are exceedingly vague), in effect, present but two questions, and they will be considered first:

1st. Does the act of November 30th, 1858, making it the duty of the probate court to require bond of executors and administrators, prior to the sale of real estate, conditioned for the faithful application of the proceeds of such sale (sheet acts of 1858, p. 187), apply to sheriffs who have been appointed administrators by virtue of article 68, p. 440 of Code?

2d. Was there such a failure on the part of the administrator, to publish the sale, by posting notices, as to render the sale null and void?

As to the first point, the acts of 1858, and the provisions of the code relating to executors and administrators, are in *pari materia*, and are to be construed in harmony with each other, if possible. The article of the code referred to, says: " No sheriff shall be required to give security for his faithful administration;" and we do not believe the general words of the later act were intended to repeal the special exemption or exception of the first; but to require the administrator to comply with the act of 1858, would be compelling him to give security for his " faithful administration," if the sale of

realty, by him, be a matter of administration. That it is a matter of administration, is put beyond question by the decisions of this court. Lee v. Gardiner, 26 Miss., 542; Forniquet v. Forstall, 34 ib., 978; Servis v. Beatty, 32 ib., 87.

The legislature, beyond question, by the plain words of the statute, require no bond of the sheriff, as administrator of personalty. Is there any reason why he should not be trusted with the proceeds of land sales more than with other funds? He is no more liable to waste the one than the other. Indeed, the land of an insolvent estate, to all intents and purposes, is personalty; the law expressly makes its assets. Code, 443, art. 80. Nay, more than that, this court holds, in the case of Lee v. Gardner, 26 Miss., 542, that it is assets on hand at the time of the death of the testator. That case was an action of debt in judgment against the defendant as administratrix, suggesting a *devastavit*, and the declaration averred that the said administratrix had of the goods and chattels, credits, etc., which were of the estate of the deceased at the time of his death, in her hands to be administered, to the amount of plaintiffs' judgment, of which she distributed the sum 'of $13,395 00 to the heirs, and thereby committed a *devastavit;* to which one of the pleas answered, "that no money or credits which were of the deceased at the time of his death came to her hands, and that all such goods and chattels as were of the deceased at the time of his death, which came to her hands, were duly sold by order of the probate court, and the proceeds paid to creditors, and that no part thereof was wasted or misapplied;" to which the plaintiff replied, in substance, that the administratrix represented the personal estate to the probate court to be insufficient to pay the debts; obtained an order to sell the realty, which she sold for the purpose, for $20,092 50, and received the money, but did not apply it to the payment of the debts of the estate; to which replication defendant demurred, and urged, among other causes, that the replication was a departure from the declaration, which avers a *devastavit* of goods, chattels, etc., which were of the deceased at the time of his death, while the

replication alleges waste and misapplication of the proceeds of land sold after intestate's death. Considering this objection, with another of a similar character, the court says (p. 543): "The main point involved in both these objections, is whether the real estate of a deceased person, administered by the probate court, or under its jurisdiction, for the payment of the debts of the deceased, in case of the insufficiency of the personal estate properly shown, is assets subject to such administration as of the time of the death of the intestate, and whether the administrator is responsible to creditors for the proceeds, as for assets of the deceased at the time of his death."

"By the statute," (Hutch. 666, § 98, which is substantially the same as the provision of our present Code on this subject) the court continues to say, "the probate court is required to direct a sale of the lands of the deceased for the payment of debts, in case of insufficiency of personalty. Its jurisdiction over the lands is as ample as over the personalty. They are equally liable for the payment of debts of the deceased, the personalty being only required to be first exhausted, and both appertain to the regular and exclusive jurisdiction of the probate court in "matters of administration.

"It may be said that the lands are not assets until they are sold and the proceeds received; and this is true, so far as the actual administration of them is concerned. Yet they are nevertheless assets, subject to the payment of debts before the actual appropriation of them to that purpose. Nor are they the less assets, because their liability as such depends upon the contingency of the deficiency of personalty. When that contingency occurs, they become as completely subject to the payment of debts as the personalty, their liability as such having relation back to the death of the deceased."

Here is an emphatic recognition of the principle that the proceeds of land in such cases are to be regarded as assets, subject to administration and subject to come into the admin-

istrator's hands, as of the time of intestate's death, and of course, as existing at the time of the grant of administration; and this ruling has been repeatedly re-affirmed. Servis v. Beatty, 32 Miss., 87; Evans v. Fisher, 40 Miss., 644. Now, this meaning of the law was declared in 1853, and it follows, as a natural consequence, that, when the legislature, four years afterwards, in the Revised Code, saw proper to commit the estates referred to in art. 68, p. 440, to the sheriff, it of course contemplated that he should administer proceeds of realty (in a proper case) as well as personalty, and that no security should be required for either. Had they contemplated otherwise, they would have passed a declaratory or amendatory statute to correct this construction of the same law, as it stood in Hutchinson's Code.

It may be argued that, from the reading of article 68, page 440, of the Code, the legislature contemplated an administration of personalty only, because it says, if any person has died, etc., " and has left personal property in the county of such judge, and no one will qualify," etc. But we think the words were used only to designate in what particular county the letters should be granted; and the court having once obtained jurisdiction of the estate, by a grant of letters, the whole law of administration would at once attach to the estate, both real and personal. The court would thus (by the grant as to personalty) acquire jurisdiction of the whole subject matter of administration, land included; because it would be, in the words of the constitutional grant of jurisdiction (which have been too often explained by this court to need mention), a "matter of administration." If the reading of the statute in this respect, is tortured into an objection, it will apply with equal force to all administrations; for article 61, page 438, of the Code, directs that the granting of administration, in ordinary cases, shall pertain to the probate court of the county (1st.) in which the intestate had, at the time of his death, a mansion-house or known place of residence, but if he had no mansion-house or known place of residence, then, (2d) to the probate court of the

county where he died, or (3d) that in which his personal property, or the greater part of it, may be. Suppose a grant of administration should be made to one of the next of kin, or a creditor, on his own application, in the 3d case above, namely, where the deceased had no mansion-house or place of residence, and the letters are issued by the court of the county in which " his personal property, or a greater part of it, may be ; " and suppose the deceased should have left real estate in another county, or in the same county, will it be contended that the law relative to selling land for debts, would not apply under such circumstances ? Of course not, and yet the same facts decide the jurisdiction in such an instance, that decide them in article 68. Or suppose that the grant should be in the county where the testator had a mansion-house or residence. His mansion-house may be on a sixteenth (school) section, or he may hold it under any other terms, for years or lease ; still, that would not be real estate ; but concede that the mansion-house should stand on the decedent's own freehold, would that give the administrator any power over the freehold ? Clearly not. It must be borne in mind that the grant of administration never applies to real estate ; it is always of goods and chattels, and the question of realty has nothing to do with it. Thus, it is evident, to what an absurdity such a construction of article 68 would lead. The designation of the county in which the intestate " left personal property," is used in that article only to point out what court shall grant the letters ; just as it is made the criterion in the third instance in article 61. It could not more properly be made to depend upon the county in which he owned land, because there cannot be an original grant of administration of real estate ; such property can only be administered as an incident, in the single exceptional case of a deficiency of assets.

But to hold that a sheriff administrator must give the bond required in the act of 1858, would often be to require an impossibility ; would lead to an absurdity ; would not only defeat the ends of justice and aim of the law, but would

defeat the very operation of article 68 itself. That article is a wise provision of the law for the protection and management of estates, which can find administration in no other way, when, for reasons that very often happen, even with large estates like the one now before the court, and where helpless minors are concerned, the persons to whom the law naturally confides them (the estates), either will not, or cannot qualify, or, in the expressive language of the article itself, when "no one will qualify." In such events, it is made the duty of the sheriff to receive the property thus committed to his care. It often happens in our large counties that many estates, comprising immense landed interests, are thrown into the hands of a sheriff in this way. Most of them, too, are insolvent (for this court knows judicially the bankrupt condition of the country), and the lands have to be sold. Where is the sheriff, where is any citizen of Mississippi, who could find bondsmen for such enormous sums, especially in addition to the heavy penalties of sheriff bonds ? Who could find security for the application of proceeds of land of half a dozen estates like this very Simmons estate, here in litigation ? Indeed, the men could not be found who would be worth the penalties of so many bonds, if willing to execute them. The almost countless number of insolvent estates shows the pitiable condition of the country in this respect, and those who live, are, too generally, as insolvent as the dead. Yet it is the sheriff's duty to take all the estates thus referred to him; he had no choice; and if he cannot give the bonds, must justice fail; must the estates go to waste ?

But even if a sheriff could give the bonds, he might refuse; and where is the power to compel him ? You cannot force a man to give a bond, and if you could, the bond would be void for duress; much less can you force him to get others to sign a bond.

The view contended for by appellants leads to absurdities which increase in number and enormity, the further we follow the argument. The act of 1867 (pamphlet acts, p. 432,

section 5), creating the office of county administrator, repeals section 68 of the Code under consideration," except in such cases where no person will accept the office of county administrator and qualify as such." Suppose, under this exception, a sheriff should be appointed administrator, will the argument go the preposterous length of saying that the sheriff must undertake the responsibilities or impossibilities which the whole world, including the regular officer, now contemplated by law, refuses?

This act of 1867, contains further evidence that the legislature did not intend the sheriff to give such bonds, for it *in pari materia* with the provision of the code, on the subject, and section 2, of the act of 1867 (page 430), says : " Then it shall be the duty of the probate judge to grant letters of administration, etc., to the said county administrator, whose duty it shall be to proceed to administer the estate according to law, and under the direction of the court, without giving any other bond than the bond hereinafter provided for." The words " proceed to administer the estate," include the selling of realty, which we have already shown to be a " matter of administration."

We will now demonstrate that there is no hardship or inconsistency in the view contended for by the appellee; but that, on the contrary, the legislature, foreseeing the difficulties above-mentioned, placed these administrations just where they would be safest. The very difficulties we have mentioned, must have occurred to the law-makers, or they would not have exempted the sheriff from giving the general administration bond, as they do in article 68; and those difficulties would be as fatal, if the sheriff were required to give the bond of the act of 1867, as if he were required to give the former. ·

But why did the legislature, foreseeing these difficulties, select the sheriffs, above all others, to administer in such cases? It is plain. In the first place, their official bonds as sheriffs, which are very large (in Yazoo county, whence this case comes, being twenty thousand dollars, Rev. Code, 122,

art. 113), make provision for the circumstance, and a sheriff would be liable, on such bond, for mal-administration. The condition of the bond is, "that if the said A. B. shall faithfully perform and discharge the duties of the office of sheriff, and all the acts and things required by law, or incident to his said office, during his continuance therein, then," etc. No one will dispute that such administrations were (and still are, under the said 5th section of the county administrator law) "incident to" the office of sheriff.

Again, the law reposes particular trust and confidence in the integrity, honor and ability of the sheriff. He is a high officer of the law, and the law presumes that he will discharge all incidents pertaining to his office, faithfully. He is elected by the choice of the people themselves, who, when they vote for him, are presumed to know that, in the course of events, he may be called on to administer their estates, without further security than his official bond, and they select him with this object in view. It is a necessity of society, that estates like these under discussion, whom nobody will administer, should be committed to the care of some one, and to whom could they be so well confided as to a man chosen by the people themselves—a man, it must be presumed, of honor and responsibility, or he could not obtain an office of so great importance and trust. But if onerous burdens and conditions are annexed to such a duty (and the giving of large bonds is an onerous condition), who could be found to answer this great need of society?

Thus, it seems clear that the act of 1858, does not apply to sheriffs.

2d. We come now to the next question proposed in the commencement of this brief, namely: Was the posting of notices by the administrator, in compliance with the law and order of the court, or was the sale void for want of proper posting?

3d. Appellant's 6th assignment of errors, state that "the administrator erred in selling the homestead and exemptions of the children of decedent, as shown by the evidence, and

no title thereto passed by such sale to J. M. Rucker." To which we reply, as we argued in the court below, that the court has no jurisdiction of the question of the sale of the homestead exemptions. That matter is not before the court.

4th. The 9th assignment of errors is, that "the report of sale was made after the lapse of several terms of the court after sale, say one year, and without notice to any one, and by John T. Heth, deputy sheriff."

We beg the court not to be mislead here, by an assignment which states only half the facts, as they appear on the record. It will be sufficient to observe, that there are two petitions and two orders of confirmation, the first of which petitions and orders were at November term, 1867, of the court below. The administrator himself, not being satisfied as to their legality, afterwards filed a second petition to confirm the sale, setting forth, in this second petition, to which we particularly refer, the insufficiency of the first decree of confirmation, and praying for citations (which were issued and served) upon all parties interested, to show cause why a new decree of confirmation should not be granted. The second order of confirmation was accordingly founded on this second petition. And this last petition and order, and the proceedings relating to them, make the case now before the court. The first have never been regarded as valid, by either side, at least for the purposes of this case; and this exception is made in this court, for the first time. It was not heard of in the court below. It is to the last petition and order that we desire to call the attention of the court, in order that they may not be mislead by the partial and erroneous statement of facts in the 9th assignment, which we believe must have been made by inadvertence, and not with the intention to mislead—a thing of which we know opposing counsel are incaple.

5th. The tenth assignment of error is because " the estate of decedent was reported insolvent by Jno. T. Heth, deputy sheriff, and order of sale made thereon of the real estate and upon his petition."

If the court will turn to the petition itself, it will see that upon its face, at its commencement, it is in plain words said to be the petition of Samuel M. Dyer " as administrator of the estate of W. H. Simmons, deceased." It purports to be the petition of S. M. Dyer, and his name is signed thereto by Jno. T. Heth, deputy sheriff. An administrator, as well as another person, may employ the hand of a third party to sign his name. There is nothing in principle against it. Suppose he were palsied, blind or illiterate, will it be said he could not thus write his name ? Besides, it is a mere ministerial act, and such acts all trustees may do through agents. Hill on Trustees, 540, 541. Eldridge v. McMakin, 37 Miss., 72; Learned v. Matthews, 40 Miss., 224, and Cason v. Cason, 31 Miss., 578; 39 Miss., 174, 324, 374; 40 Miss., 775, and references. Eldridge v. McMakin, 37 Miss., 72, and Learned v. Matthews, 40 ib., 224.

6th. To plaintiff's 5th, 6th, 7th, and 8th assignments we object, and say the court should not consider them, because they are too vague and general. 39 Miss., 224, ib. 374; ib. 419.

7th. We object to appellant's 9th, 10th, and 11th assignments, because they are objections which were not made on trial, but are raised here for the first time. See 39th Miss., 174, 324, 374; 40 Miss., 775, and references.

PEYTON, C. J.:

It appears from the record in this case, that upon the application of Samuel M. Dyer, as administrator of the estate of William H. Simmons, deceased, the probate court of Yazoo county declared said estate insolvent, and ordered and decreed that certain lands, owned by said decedent at the time of his death, should be sold for the payment of debts, and that in pursuance of the decree of sale, the said administrator sold the same to J. M. Rucker on a credit of nine months, who gave bond and security as required by the decree of sale for the purchase money.

It is conceded that said Samuel M. Dyer was sheriff of said

county of Yazoo at the time he was appointed administrator of said estate by the said probate court, under art. 68 of the Rev. Code, 440, and that he executed no bond prior to the sale of said real estate, for the faithful application of the proceeds thereof, according to law.

The confirmation of the sale was resisted by the purchaser, J. M. Rucker, on the ground that he acquired no title to said lands by the sale, and that the same remains in the heirs of the deceased. The objection was overruled and the sale confirmed by the court; and from this decree of confirmation, the said J. M. Rucker and others appeal to this court. Hence, it will be readily seen that the main question for our determination arises on the construction of our laws on the subject of the administration of estates.

It is insisted by the counsel for the appellee, that as the law of 1857, under which he was appointed administrator, did not require him to give security for his faithful administration of the estate, he was thereby relieved from giving bond with security, prior to the sale of said real estate under the decree of the court for the faithful application of the proceeds of the sale, according to law.

We cannot concur with counsel in this view of the law. The only bond dispensed with by the art. 68 of the Code of 1857, is the one required by art. 63 of the Rev. Code, 438, to be given by an administrator of the personal estate of the decedent, for the faithful administration of that species of property; the penalty of which bond is required to be only equal to the value of all the personal estate of the deceased. The bond was not intended to secure the proper application of the proceeds of the sale of such real estate, as may be sold by an administrator under a decree of the probate court.

The administrator deals with the personal estate, which is the primary fund for the payment of debts, and has nothing to do in the first instance with the real estate, which descends upon the death of the decedent to his heirs, whose title can be divested only in the mode and manner and for the purpose specially provided in the statute. The sale of real

estate by an administrator is regarded as a matter of special jurisdiction, which can only be exercised upon condition that everything has been done which the statute requires should be done preceding the sale.   Upon a deficiency of the personal estate to pay debts, our statute authorizes a resort to the real estate for that purpose.   And as we have seen that the bond of an administrator, under the law of 1857, does not apply to real estate, and is no security for the proper application of the proceeds of land sold for the payment of debts. The legislature has wisely remedied this defect in the law, by an act approved November 20th, 1858, by which it is provided, that whenever the probate court shall order a sale of land for the payment of debts under the 89th article of the Rev. Code, 446, it shall be the duty of the court to require the executors or administrators, prior to the sale of said real estate, to execute a bond, with good and sufficient security, for the faithful application of the proceeds of such sale, according to law.   This applies to all executors and admisistrators, without exception.   There is no ambiguity in the language of this act.   It is clear, explicit and imperative, and. leaves no room for construction.   This view of the law is sustained · by former adjudications of our predecessors in the cases of Currie v. Stewart, 26 Miss., 646 ; and Hamilton v. Lockhart, 41 Miss., 469.

The sale in this case is void, for the reason that the administrator did not give the bond required by the law of 1858, and the title to the land sought to be sold remains in the heirs of the deceased, unaffected by the sale.   And for this reason, the court erred in confirming the sale.

· The decree is reversed, and the cause remanded.