FEDERAL LAND BANK OF OMAHA, APPELLEE, V. AGNES TUMA ET AL., APPELLEES; JOHN M. FOLDA, APPELLANT; STEPHEN TUMA ET AL., INTERVENERS, APPELLEES.

FILED NOVEMBER 10, 1927. No. 24997.

*W. B. Sadilek* and *Dolezal, Spear, Mapes & Stevens,* for appellant.

*George W. Wertz, E. F. Dougherty, Byron B. Oberst* and *John C. Sprecher, contra.*

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOSS, C. J.

This is an appeal by John M. Folda, one of the defendants, from the judgment and decree of the district court, finding his mortgage to be null and void and dismissing his cross-petition.

There is not so much dispute as to the facts as to the conclusions to be drawn therefrom. This situation calls for a rather complete and definite statement of the evidence.

Frank Tuma, a resident of Colfax county, died testate on or about October 21, 1917. He left surviving him his widow, Agnes Tuma, and the following children: Stephen Tuma, age 17, Emil Tuma, age 14, Emilie Tuma, age 11, Lumir Tuma, age 10, Lambert Tuma, age 6, and Paulina Tuma, age 4. The widow duly and formally elected under the statute not to take under the will. She administered the estate, and on November 11, 1918, a decree on her final account was entered, assigning to her a homestead interest in the premises, as well as a one-third interest, and assigning to each of the children a one-ninth interest in the land, described as the south half of the northwest quarter and the northeast quarter of the northwest quarter of section 29, township 20, in Colfax county, Nebraska. The decree further found that the widow had personally advanced $4,716.42 besides $24 additional court costs for the benefit of the estate and gave her a charge and lien upon said real

estate on account thereof. The homestead was free from incumbrance at the time of Frank Tuma's death.

On September 9, 1918, Agnes Tuma executed a mortgage for $5,000 to Frank C. Hrabak, who was a cashier of the Colfax County Bank, located at Howells, Nebraska, on her undivided one-third interest in the 120 acres. There is testimony to the effect that this mortgage was transferred by Hrabak to the bank before the transactions which gave rise to this case; at any rate, the bank became the owner of it. November 30, 1917, Hrabak was appointed guardian of the six minor children and was such guardian until his resignation, tendered on July 16, 1920, was accepted on September 18, 1920, on which day Agnes Tuma was appointed as their guardian. On August 25, 1924, Agnes Tuma was discharged as guardian for the minors, and on the following day Stephen Tuma, who had then become of age, was appointed guardian of his five brothers and sisters. On March 2, 1920, Agnes Tuma gave a mortgage, recorded March 29, 1920, to E. Quesner, for $11,000, on her interest in the 120 acres described and covering also an adjoining 40 acres which she purchased on speculation. This mortgage was released September 25, 1920, the release being recorded October 4, 1920.

On September 13, 1920, by a mortgage recorded September 28, 1920, Agnes Tuma mortgaged for $19,000 to herself as guardian of the minors the 120 acres and the adjoining 40 acres; the records show a release of this mortgage March 1, 1923, the release being recorded five days later. On November 21, 1923, Agnes Tuma gave a mortgage for $1,161.65, which was recorded the next day, in favor of Joseph K. Suchan and Rudolph L. Suchan, covering the 120 acres.

The defendant, H. D. Myers, had a judgment lien against Mrs. Tuma in a justice court for $199.99, and the transcript was filed in the district court May 10, 1923.

In February, 1920, Agnes Tuma, with her son Stephen, went to John H. Roper, at Dodge, and employed him to procure a loan from the Federal Land Bank of Omaha, agree-

ing to pay him a commission of one per cent. of the amount of the loan secured. Roper was secretary and treasurer of the Surety National Farm Loan Association at Dodge, a corporation chartered by the Federal Farm Loan Board under the act of congress known as the Federal Farm Loan Act, passed July 17, 1917. An application was made by her for a loan. Shortly thereafter Mrs. Tuma was notified by Roper that a loan could not be made unless she acquired the entire fee title to the land. On consultation with her attorney, she brought an action for partition in the district court for Colfax county, on March 5, 1920. Frank C. Hrabak was appointed referee on April 26, 1920, and on April 30, 1920, filed his report showing that partition in kind among the widow and heirs could not be made. May 24, 1920, the court confirmed the report and directed a sale of the land. The referee sold the land to Agnes Tuma, on her bid of $250 an acre, for $30,000, which was the fair value of the land. Frank C. Hrabak, referee, filed his report of sale July 16, 1920, and his supplemental report on September 18, 1920, on which day the court confirmed the sale and directed the referee to execute a deed to the purchaser. The referee's supplemental report showed that the expenses of making the sale totaled $870.80; that he paid the equitable lien of Agnes Tuma, with interest from November 11, 1918, totaling $5,130.27; and that, after the payment of these items, there was left $23,998.93, to be divided as provided in the order determining shares, one-third, or $7,999.64, to the widow, and $2,666.55 to each of the children. The report stated that the referee filed receipts from the parties entitled thereto or from their guardian, and among the attached receipts were those from Agnes Tuma, receipting for her equitable lien and for her one-third interest, in the sums above named, and Frank C. Hrabak, guardian of the minors named, acknowledged that he had received from Frank C. Hrabak, referee, the sum of $15,999.30, in full of the minors' shares in the proceeds of the referee's sale. The referee conveyed the land sold to Agnes Tuma by deed dated September 13, 1920, and recorded September 16,

1920. On September 18, 1920, there was filed in the guardianship matter, in the county court, the receipt of Agnes Tuma, in favor of Frank C. Hrabak, retiring guardian, for the sum of $15,999.30, and acknowledging receipt from Hrabak, retiring guardian, of $1,891.21, "cash money and interest accumulated thereon which the minors received from the insurance of their father." The receipt also acknowledges "receipt of one note of Agnes Tuma for $2,091, made to Frank C. Hrabak, as guardian, on September 14, 1918, and bearing interest at 5 per cent. from date, being their money in the share of the personalty of the estate of Frank Tuma, deceased. In fact, the referee never received the purchase price in money or its statutory equivalent. On September 16, 1920, there was recorded the mortgage for $10,000 given by Agnes Tuma to the Federal Land Bank of Omaha on the 120 acres of land, to secure a note for $10,000, with interest at 5½ per cent. per annum, payable semi-annually at the rate of $325 each January 1 and July 1 until July 1, 1954. On September 13, 1920, Agnes Tuma executed and delivered to John M. Folda a mortgage for $10,000, covering the home place and the additional 40 acres. This was recorded September 28, 1920. Also, on September 13, 1920, Frank C. Hrabak released his $5,000 mortgage, heretofore described, on the 120 acres, which release was recorded October 23, 1920.

The inception of the trouble reflected in this action was the purchase by Mrs. Tuma late in 1919 or early in 1920 of the 40 acres adjoining the Tuma farm. She contracted to pay $12,000 for it, paid $1,000 down and was to make settlement by March 1, 1920. To finance this she borrowed $11,000 temporarily from E. Quesner, on the mortgage heretofore referred to, and then, to help discharge the Quesner loan, she sought and secured the loan from the plaintiff. Out of this loan she did not receive the full $10,000 in money. She had to take $500 in shares of the Surety National Farm Loan Association and to pay the commission of $100, as well as other items of expense, so that she received less than $9,500 as the net proceeds of the mortgage.

Ultimately she disposed of the 40 acres on a falling market at a considerable loss. Her troubles were further increased by the failure of the Lion Bonding Company, which was the surety on her guardian's bond. Her inability to give another bond led to her discharge as guardian as well as prevented any chance for the minors to recover any loss occasioned by her failure to handle their estate as her duty as guardian required.

The district court found and decreed as follows: That the Federal Land Bank of Omaha, plaintiff, by virtue of its mortgage, has a first lien for $10,508.28, which should be reduced by the cancelation of the par value of 100 shares of Mrs. Tuma of the par value of $5,000 in the Surety National Farm Loan Association and by the retirement of the equivalent number of shares at par by the plaintiff, so that the net amount of plaintiff's first lien is $10,008.28, to bear interest at 8 per cent. per annum from the date of the decree; that the defendants Joseph K. Suchan and Rudolph L. Suchan have a second mortgage lien on the premises, amounting to $1,299.10, with interest at 10 per cent. per annum; that H. D. Myers has a judgment lien which is a third lien on the premises, but that Agnes Tuma is the head of a family and as such has a homestead interest in said premises, and that the judgment lien of said defendant Myers, amounting to $228, to bear 7 per cent. interest, is subject to the homestead right of Agnes Tuma; that the mortgage of $10,000, set up by John M. Folda, is null and void and should be canceled, and that the said John M. Folda is not entitled to have the release of his prior mortgage of $5,000 set aside and said prior mortgage reinstated; and that the mortgage given by the defendant Agnes Tuma to the defendant Agnes Tuma, as guardian of the interveners, for $19,000, is a subsisting mortgage and lien upon the real estate, subject only to the liens hereinbefore found, and that the interveners are the owners of said mortgage lien; that there is now due and payable thereon the sum of $23,433.33, to bear interest at 7 per cent. from the date of the decree.

The process of reasoning by which the trial court reached these conclusions is shown by his opinion reduced to writing and filed in the record of the case. We acknowledge the valuable aid thereby given us in our review of the case.

The first thing to determine is whether the referee's deed to Mrs. Tuma is void because of failure to collect the purchase price of the partition sale of the land. If it is void or is voidable as against innocent purchasers, then the interveners whose interests in the estate were sold at the partition sale would be entitled to relief from the mortgages and liens asserted by the plaintiff and other parties to the suit, whether these lienors are innocent purchasers or not.

Section 9264, Comp. St. 1922, relating to partition sales, provides that no conveyance can be made until all the money is paid, or without receiving from the purchaser a mortgage upon the land so sold or other equivalent security. It provides that, if the sale be confirmed, an order shall be entered directing the referee to convey. Section 9265 provides that such a conveyance, when recorded, shall be valid against all subsequent purchasers and against all interested persons who were parties to the partition proceedings. In this matter, the referee reported to the court that he had received the money and thereupon the court confirmed the sale. There appears nothing, therefore, in the statute cited that would prevent a later purchaser, who was innocent in fact, from acquiring good title. This view is supported by *Kazebeer v. Nunemaker,* 82 Neb. 732, holding that, in a partition suit regular on its face and with fraud absent from the face of the proceedings, the parties thereto are estopped thereby, although the judgment is erroneous and would have been reversed on appeal; and by *Manfull v. Graham,* 55 Neb. 645.

In a discussion of the Federal Land Bank mortgage, it should be noted that it was stipulated on the trial that this mortgage is a first lien, "at least to the extent of the equitable lien which the court granted Agnes Tuma in the sum of $4,716.42, plus her one-third interest." The court, however, gave the plaintiff an unconditional first lien on the

land, on the theory that the record in the partition suit was conclusive, unless some actual notice was brought home to the plaintiff which would destroy the legal effect of that record. It is claimed that Roper had knowledge that the amount was not paid in cash by the purchaser at the partition sale, and that this would be notice to the Federal Land Bank. The evidence shows that Mrs. Tuma paid him for securing the loan. His duty was to make out the application as secretary of the local Farm Loan Association, and as such to transmit it to the plaintiff bank. He knew that the plaintiff would not make to Mrs. Tuma, the applicant, a loan until she had a perfect record title, and the most he could know would be that she could not get such a title except through partition proceedings. Assuming that he told the loan association and the plaintiff all that he had learned, yet there was nothing at that time to indicate that any fraud would be perpetrated on the minors. It would be presumed that the guardian of the minors was under bond and acting under the direction of the county court. There is nothing we can find in the evidence to indicate that Mr. Roper advised, participated in, or knew of any fraud, actual or constructive, and that his only knowledge that he could have communicated to the Federal Land Bank was that of a plan to get the title in the mother's name by legal methods. One of the earliest cases in this country, where the principle involved here was decided, was by Chancellor Kent, in *Field v. Schieffelin*, 7 Johns. Ch. (N. Y.) *150, the syllabus of which is as follows:

"A guardian having the legal power to sell or dispose of the personal estate of his ward, in any manner he may think most conducive to the purposes of his trust, a purchaser, who deals fairly, has a right to presume that he acts for the benefit of his ward, and is not bound to inquire into the state of the trust; nor is he responsible for the faithful application of the money, unless he knew, or had sufficient information at the time, that the guardian contemplated a breach of the trust, and intended to misapply the money;

or was, in fact, by the very transaction, applying it to his own private purpose."

Moreover, we are impelled to support that policy of the law which seeks the stability of titles. If sales, which are perfectly fair on their face, which appear to have been conducted according to law, and have been approved by the court, as was this partition sale, are to be held invalid by reason of secret agreements between a referee and the guardian, not ascertainable by such investigations as would ordinarily be made by a reasonably prudent person, then all titles thereby acquired would be rendered practically unmarketable and estates could not realize at a referee's or guardian's or other judicial sale the fair value of the property sold. We therefore hold that the Federal Land Bank mortgage was valid and is a first lien on the premises described in it.

The John M. Folda mortgage for $10,000, and the Hrabak mortgage for $5,000, both represented investments of the money of the Colfax County Bank. The Hrabak mortgage for $5,000 was for money borrowed by Mrs. Tuma and used to pay debts and expenses of the Frank Tuma estate. No question as to its validity could have been raised. It was released for the purpose of allowing the plaintiff's mortgage to come first and then was merged in the larger mortgage for $10,000, taken in the name of John M. Folda, for the increased amount, to cover $5,000 additional money borrowed by Mrs. Tuma. The $5,000 mortgage covered Mrs. Tuma's undivided one-third interest in the land, which she had a perfect right to mortgage. The $10,000 mortgage originally covered the entire title of the home place and the additional 40 acres, which latter tract was released when it was sold. Hrabak, while guardian of the minors, was appointed and acted as referee. There was no inconsistency in these two offices. But he was also an officer in the Colfax County Bank and owed fealty to it as to the Folda mortgage owned in fact by that bank. When, as referee, he sold the land, he filed his receipt as guardian, indicating that, as such guardian, he had received $15,999.30 in money as pro-

ceeds belonging to his wards, and when, immediately there-
after, he resigned as guardian and took the receipt of Mrs.
Tuma as his successor in the guardianship for a like sum,
he participated with her in a deception of the court and in
a legal fraud upon the minors and their estate. These re-
ceipts did not represent money. They had no money value.
They were a part of the scheme to change the record title
of the interest of the heirs in the real estate into a paper
title in their mother. It was successful only as to inno-
cent purchasers. If that transaction be allowed to stand
as to the Folda mortgage owned by the bank of which Hra-
bak was an officer and to be governed by the rule announced
by us as applicable to the first mortgage, then the Folda
mortgage, which before the sale could not have been a lien
upon the interests of the minors, would, by the proceedings
and by the acts of Hrabak and of Mrs. Tuma, be so pro-
moted as to become a lien on their interest in the land. We
think it clear that Hrabak's knowledge bound the bank, and
that it and Folda, as its mortgage trustee, are in no sense
innocent purchasers. It was, as we have seen, the derelic-
tion of duty of Hrabak as referee and as guardian that per-
mitted the Federal Land Bank to become innocent pur-
chasers and to obtain a valid record lien upon the estate of
the minors; but, in contemplation of law, his bank knew
what he, as an officer of the court, knew, and cannot claim
or secure protection as an innocent purchaser. Equity re-
quires that we restore the minors, as nearly as possible,
to the position they would have occupied had their guard-
ians done their duty in preserving their interest in the
estate. A court of equity, having jurisdiction of the parties
and the subject-matter of a mismanaged guardianship
estate, will put the estate belonging to the wards as nearly
as possible where it was or would have been had no mis-
management taken place. This demands that we affirm
that part of the decree of the trial court which cancels the
John M. Folda mortgage, but it does not require that we
affirm that part of the decree which refuses to reinstate the
Hrabak mortgage. The debt secured by the latter mort-

gage was merged in the increased debt secured by the Folda mortgage. The Hrabak mortgage was a valid lien on Mrs. Tuma's interest in the land and secured a valid debt owing by her to Hrabak, but really belonging to the bank of which he and Folda were both officers. The Folda mortgage likewise belonged to the bank. We think it accords with the principles of equity to allow the Hrabak mortgage to be reinstated as a lien effective only as against Mrs. Tuma's interest in the land, being careful, however, that such reinstatement shall not of itself lessen the interests of the Tuma children in the land nor in their shares of the proceeds. The chief difficulty in this connection, however, is that of determining the priority as between the Hrabak mortgage and the Suchan mortgage. There seems to be no particular controversy as to the Suchan mortgage. There is no evidence that the Suchan brothers are not, like the Federal Land Bank, in the situation of innocent purchasers. The trial court so treated them. In carrying out our expressed purpose of guarding the interests of the Tuma children, we intend to require the proceeds of the sale of their mother's interests in the land to be applied, so far as they will go, toward the payment of the mortgages of those herein found to be innocent purchasers. So, while the first mortgage and the Suchan mortgage are both liens on the entire estate in the land, yet the Hrabak mortgage is a lien only on the mother's interest; and to allow the Hrabak mortgage to be paid out of the proceeds of Mrs. Tuma's interest, prior to the payment of the Suchan mortgage out of those proceeds, might, and we think probably would, end in taking some or more of the proceeds equitably belonging to the children, as the result of the sale of their interests. We therefore place the reinstated Hrabak mortgage and its lien next after the Federal Land Bank and Suchan liens.

The Myers judgment became a general lien against the real estate of Agnes Tuma on May 10, 1923. It, unlike the other liens, was subject to her homestead rights.

We are not in accord with the decree of the trial court wherein the court reinstated the $19,000 mortgage of Agnes

Tuma to herself as guardian, allowed it as a lien for $23,-433.33, and gave the Tuma children a right to a judgment against their mother for any deficiency there might remain after payment of other liens and of this. In their pleadings they had not specifically prayed for any deficiency judgment against their mother, but had asked for one against Hrabak. True, they asked for a lien upon the real estate for their respective shares, but they also asked "that the proceedings had at such referee's sale may be decreed null and void, and as conveying no title to the purchaser thereat." Their mother was the purchaser and the $19,000 mortgage was based on whatever title she obtained by that purchase. It was not a proper investment of their funds, was not authorized by any court, and probably would not have been authorized by any court. While we have held that the plaintiff and the Suchans are as mortgagees innocent purchasers under those proceedings, we do not believe that equity will best serve the interest of the Tuma children by holding that the sale was valid as to the children in all respects, although, as we have shown, the law would authorize us to hold it valid throughout. It was voidable and should be avoided for the best interests of the children save as the rights of innocent purchasers are involved. Futhermore, we do not wish to establish the precedent of recognizing such sales to any greater extent than we have so far done here. In the circumstances, we think it the better course to preserve, as far as possible, the interests of the children in the land, and, in case of a judicial sale hereunder, in the proceeds of such sale. This method will make effective the right of redemption of the parties if by chance their circumstances become such that they may redeem.

We are therefore of the opinion that the equities suggest a decree ordering a sale of the land, and that out of the proceeds there be paid as follows: First, the lien of the plaintiff; second, the lien of Suchan brothers; and, third, the lien of the Hrabak mortgage, but that these liens be discharged, so far as the lien and interest of Mrs. Tuma in the land be sufficient, out of her such interest and lien (with

the qualification inherent in that lien that one-third of it is against her share and two-thirds of it is against the shares of the children), otherwise, any balance of the plaintiff's lien and any balance of the Suchan lien is to be paid out of the proceeds derived from the sale of the interests of the children; if the proceeds of the sale of the interest of Mrs. Tuma be insufficient thus to pay the Hrabak lien, or any remaining part of it, then such part shall not be paid out of these proceedings; the decree should provide an ascertainment of the value of the homestead interest of Mrs. Tuma and allow it to be subjected to the payment only of the liens of plaintiff, of the Suchan and of the Hrabak mortgage; next, the judgment lien of Myers should be provided for in the decree, but to be paid only out of the proceeds of the sale of Mrs. Tuma's interest in the land, and subject to her homestead rights, as this is a general judgment against her only. The evidence seems to indicate that the $10,000 Folda mortgage had been paid down to $5,100; if so, the amount due on the Hrabak mortgage would be ascertained by taking fifty fifty-firsts of the amount due on the Folda mortgage. If the balance, and its date, are not definitely shown by the proofs already taken, further evidence will be needed to compute the correct amount of this lien. All of the liens, including that allowed Mrs. Tuma in the county court, are to have interest attributed to them until discharged. Such a decree will carry out our intent to preserve as far as possible the shares of the children in the estate, notwithstanding the mutations that have taken place.

For the reasons given, the judgment is reversed, with directions to enter a decree in accordance with the views herein expressed, and with authority, not only to consider the evidence already taken, but to take further evidence, if need be, to ascertain the value of the homestead interest of Agnes Tuma and, if necessary, to show the amount due on the reinstated Hrabak mortgage.

REVERSED.

Good, J., dissenting.

While I concur in the major part of the majority opinion, I am unable to concur in the views expressed, in so far as they relate to the $10,000 Folda mortgage.

It appears that Mrs. Tuma owed the $5,000 Hrabak mortgage to Folda, or the bank of which he was an officer; that this mortgage was released and she borrowed an additional $5,000 and executed to Folda the new mortgage of $10,000 for the amount she then owed. To secure this, she gave a mortgage upon the entire tract of land on the theory that she was the owner of all; but, as properly held by the majority opinion, the sale to her in the partition proceedings was voidable and she therefore possessed only the interest in the premises which she had before the sale. The mortgage which she executed was valid as between her and Folda to the extent of her interest in the mortgaged premises. In my view, it should be held that the mortgage of $10,000, or the unpaid portion thereof, is a valid lien upon all the interest she owned in the land at the time of the execution of the mortgage. It may be of small importance financially to Folda whether this is done or the Hrabak mortgage is reinstated; however, it is not the amount but the principle which is involved. Where one borrows money, and, to secure repayment, gives a mortgage upon land, where he owns only an interest therein, the mortgage should be held valid and a lien upon the interest of the mortgagor in the land.

I concur in the view that only the interest of Mrs. Tuma can be affected by the mortgages which she gave, except the mortgage of the plaintiff bank, which stands in the position of an innocent purchaser.