## HUGHES, APPELLANT, v. GOODALE, RESPONDENT.

(No. 1,367.)

(Submitted November 13, 1901.   Decided November 25, 1901.)

*Guardian and Ward—Sale of Real Estate—Special Bond—Omission—Validity of Sale—Judgments—Sureties.*

1. Probate Practice Act, Sec. 387, Compiled Statutes 1887, provides that a guardian authorized to sell real estate must, before the sale, give bond to a probate judge to sell the same in the manner and to account for the proceeds of the sale as provided for in the chapter. *Held,* that a sale by a guardian duly appointed and qualified, but who omitted to give the special bond required, was not void.
2. *Quaere:* Whether, under the Probate Practice Act, Compiled Statutes 1887, an executor, administrator or guardian is required in every case to give a special bond before making sales of real estate.
3. Sureties on the general bond of a guardian are liable for any loss which the ward may suffer by reason of the default of the guardian with respect to the proceeds of sales of real estate.
4. The orders and judgments of a court may be voidable for error or irregularity, but such error or irregularity does not of itself avoid such orders or judgments.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

PROCEEDINGS by Mary E. Hughes against Charles W. Goodale, as guardian of Francis Arthur Linforth and Geraldine Linforth. From a judgment for defendant, plaintiff appeals. Reversed.

### STATEMENT OF THE CASE.

This cause was submitted to the court below upon an agreed statement showing the following facts: By an order of the district court of Silver Bow County the defendant was duly appointed guardian of the estates of Francis Arthur Linforth and Geraldine Linforth, minors. Having filed the bond required to be given by Section 358 of the Probate Practice Act, Compiled Statutes of 1887, and having taken the oath prescribed by law, letters of guardianship were issued to him on

the 18th day of November, 1890, since which time he has been, and now is, the qualified and acting guardian. On the 16th day of November, 1893, the district court duly ordered the guardian to sell certain lands owned by his wards in the county of Silver Bow. In pursuance of the order, and on the 4th day of February, 1894, the defendant as guardian sold the lands to the plaintiff for the sum of $1,850. On February 28, 1894, the court approved and confirmed the sale, whereupon the property was conveyed by deed to the plaintiff. Before the sale the guardian omitted to give the special bond required by Section 387 of the Probate Practice Act, Compiled Statutes of 1887, and has never given the bond provided for therein. The guardian and his wards threatened and intended to bring an action for the purpose of ejecting the plaintiff from the possession of the property, and to obtain a decree declaring the plaintiff to have no title thereto. The parties prayed the court to adjudge from these facts whether the plaintiff was the owner in fee simple of the real estate in question as against the defendant and his wards, and whether the omission of the guardian to give the special sale bond constitutes a cloud upon the plaintiff's title. The court below decided that the omission of the guardian to give the bond before the sale rendered the sale null and void so far as the infants were concerned, and that no title passed from them, and that the plaintiff is not the owner of the property. From a judgment entered in accordance with the views of the court below, the plaintiff prosecutes this appeal.

*Mr. H. Lowndes Maury,* for Appellant.

*Mr. William D. Burbage,* for Respondent.

MR. JUSTICE PIGOTT, after stating the case, delivered the opinion of the court.

The single question arising upon the agreed statement is whether the omission of the guardian to give a special bond before the sale invalidated the sale authorized by the order.

Both parties assume that the provisions of Section 387 of the Probate Practice Act, Compiled Statutes of 1887, require such a bond to be given whenever the sale of a ward's real estate is directed to be made. Before proceeding to consider the arguments of counsel based upon this assumption, we deem it not improper to suggest a possible solution of the ultimate question upon a ground not discussed by counsel. It might be argued, with plausibility at least, that Section 387 does not require a sale bond to be given in all cases. This section provides that "every guardian, authorized to sell real estate must, before the sale, give bond to the probate judge [district judge], with sufficient surety, to be approved by him, with conditions to sell the same in the manner, and to account for the proceeds of the sale, as provided for in this chapter and Chapter VII of this title." Section 388 provides that "all the proceedings under the petitions of guardians for sales of property of their wards, making orders, rejecting or confirming sales, and reports of sales, ordering and making conveyances of property sold, accounting and the settlements of accounts, must be had and made as required by the provisions of this title concerning estates of decedents, unless otherwise specially provided in this chapter." Section 407 declares that the provisions relative to estates of decedents, so far as they pertain to the practice in the probate or district court, apply to proceedings touching estates of minors under guardianship. Now, Section 76 of Chapter III, of the title referred to in Section 388, *supra,* after imposing upon the district judge the duty to require an additional bond whenever the sale of lands belonging to a decedent is ordered, proceeds: "But no such additional bond must be required when it satisfactorily appears to the court that the penalty of the bond given before receiving letters, or of any bond given in the place thereof, is equal to twice the value of the personal property remaining in, or that will come into, the possession of the executor or administrator, including the annual rents, profits, and issues of real estate, and twice the probable amount to be realized on the sale of the real estate to be sold." If Section

387 is to be read with and interpreted in the light of Section 76, a special bond need not be required of a guardian when, in the opinion of the court, the penal sum mentioned in his general bond is sufficiently large to cover the items enumerated in Section 76, and affords ample security to the waid for the proceeds of the intended sale. If this theory be correct, "it is not otherwise specially provided" in the chapter relating to guardians that they must always give a bond before making sales of real estate; hence in the case at bar the guardian was under no obligation, so far as the record discloses, to furnish a special bond, for the presumption that the court below properly refrained from requiring a special bond must be indulged. We merely mention this as a possibly correct construction of the statutes. Counsel have not suggested it and we do not decide that the theory advanced is the correct one, nor intimate an opinion upon it, its determination being unnecessary to a decision. For the purposes of this appeal we shall treat Section 387 as unaffected in this regard by Section 76.

The contention of counsel for the defendant is that Section 387 requires a guardian to give a special bond in every case, that the provision is mandatory, and that an omission so to do renders the sale void. Counsel for the plaintiff insists that the requirement is directory only.

The question presented is one of first impression in this court. In *Power* v. *Lenoir,* 22 Montana 169, 56 Pacific Reporter 106, it was held that the giving of the general bond required by a guardian by Section 358 of the Probate Practice Act, Compiled Statutes of 1887, is indispensable to the validity of his acts so far as the rights of the ward are concerned, the section providing that "before the order appointing any person guardian under this chapter takes effect, and before letters issue, the judge must require of such person a bond to the minor, with sufficient sureties, to be approved by the judge, and in such sum as he shall order, conditioned that the guardian will faithfully execute the duties of his trust according to law; and the following conditions shall form a part of such bond without

being expressed therein: First. To make an inventory of all the estate, real and personal, of his ward, that comes to his possession or knowledge, and to return the same within such time as the judge may order. Second. To dispose of and manage the estate according to law and for the best interest of the ward, and faithfully to discharge his trust in relation thereto, and also in relation to the care, custody, and education of the ward. Third. To render an account, on oath, of the property, estate, and moneys of the ward in his hands, and all proceeds or interest derived therefrom, and of the management and disposition of the same, within three months after his appointment, and at such other times as the court directs, and at the expiration of his trust to settle his accounts with the probate judge, or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys and effects remaining in his hands, or due from him on such settlement, to the person or persons who are lawfully entitled thereto. Upon filing the bond, duly approved, letters of guardianship must issue to the person appointed. In form the letters of guardianship must be substantially the same as letters of administration, and the oath of the guardian must be endorsed thereon, that he will perform the duties of his office as such guardian according to law." In that case we said: "Section 358 of our probate law plainly and positively provides that, before the order appointing any person guardian takes effect, and before letters issue, the judge must require of such person a bond to the minor, with sufficient sureties. The intention of the legislature could hardly have been more plainly manifested. From the other sections of the statute cited *supra,* it appears that it did not even deem it wise to allow the parent to relieve the guardian of this duty by testamentary direction; for, though a provision is made recognizing the right of parents to select by will the person to whom they wish to intrust the care of their children and their estates (Section 351, *supra*), yet it requires such person so selected (Section 362) to give bond and qualify as other guardians. It is not, therefore, the recognition

by any court of the relation of guardian and ward that gives it validity, but the fact that the relation has been properly established by a complance with the requirements of the law. A person who purchases the property of a minor, or who seeks to devest him of title to his property, will not be heard to say that the minor is estopped and concluded by the irresponsible acts and doings of some person who has presumed to act as his guardian without first giving the minor the protection and security the law requires for him. * * * The latter [the ward] is, so to speak, the special favorite of the courts, and the courts will always see that his rights are protected." The decision was that the order appointing a guardian is without effect unless and until the bond required by Section 358 shall have been given. Section 75 of the Probate Practice Act, Compiled Statutes of 1887, requires that "every person to whom letters testamentary or of administration are directed to issue must, before receiving them," execute a bond. In *In re Craigie's Estate,* 24 Montana 37 (60 Pac. 495), we intimated, by way of argument, that the failure of the person appointed administrator to give a bond does not ordinarily or usually render void the letters of administration issued to him. It is proper to observe that Section 75 requires a person to whom letters are directed to issue, to execute a bond before receiving them, but does not declare that the order is ineffectual unless the bond be given. The decision in the *Craigie Case* was to the effect that the failure of a public administrator who had duly qualified by giving bond and taking oath, to file an additional bond required by the district judge as further security for the interest of an estate in his hands, did not, *ipso facto,* create a vacancy in the office of public administrator, although the statute declared that upon failure of any public administrator to give such bond as might be required by a probate judge, his office should become vacant. Neither of these cases announces a rule which must govern the decision of the case at bar.

If the omission to give a sale bond was sufficient to deprive the court of jurisdiction, the judgment must be affirmed; in

other words, if the order of sale was invalidated by the omission
to give a special bond, then by the sale the plaintiff took no
title as against the minors. If, upon the other hand, the court
was clothed with jurisdiction to make the order of sale, and the
omission to give the special bond did not deprive the order of
its legal force, then the plaintiff by virtue of the confirmation
of the sale, followed by the deed of conveyance, acquired all
the title which the minors had to the property.

The orders and judgments of a court within its jurisdiction
may be voidable for error or irregularity, but such error or
irregularity does not, of itself, avoid the orders or judgments.
This rule applies to courts of general common-law jurisdiction,
to courts of equity, and to inferior courts of limited powers;
it is applicable to all courts alike. Whenever it appears that
the act done, the order made, or the judgment rendered was
within the scope of the power conferred, jurisdiction must be
admitted, and, unless that jurisdiction is shown to have been
lost, the act, order, or judgment cannot be characterized as a
nullity. Did the omission of the guardian to give a special bond
render ineffectual the order of sale and the confirmation there-
of, thereby depriving the court of jurisdiction in the premises?
That the defendant was the duly appointed, qualified and act-
ing guardian is conceded; it must be presumed that upon a
proper petition and after a hearing the court ordered the guard-
ian to sell the lands of his wards; in pursuance of that order
the sale was made and confirmed; a deed of conveyance was
thereupon duly executed by the guardian and delivered to the
plaintiff. That the district court had jurisdiction of the class
of cases or proceedings to which the one at bar belongs, and
therefore of the subject-matter of this proceeding, and had
jurisdiction of the persons of the wards, is also conceded. Its
jurisdiction was regularly invoked. In making the order of
sale its jurisdiction was duly exercised. As we have said, the
sale was not void unless the omission to give a special bond
rendered the order of sale ineffectual; that is to say, unless the
court lost jurisdiction of the subject-matter by the failure of

the guardian to execute a special sale bond, the plaintiff by the sale acquired title to the lands. No mere irregularity, however great, can avail the defendant or his wards in such an attack as is here made. Such defect or irregularity cannot be inquired into by means of a collateral action.

The object sought to be attained by Section 387 is the protection of the financial interests of the ward. For any loss which a decedent's estate may suffer by reason of the failure of an administrator properly to account for and pay over the proceeds of a sale of land, the sureties on his general bond are certainly answerable. This appears by Sections 75 and 76, *supra,* and we perceive no reason why, under the statutes of Montana, any different rule should be applied to sureties on the general bond of a guardian. By Section 358 the guardian must execute to the minor a bond with sufficient sureties in such sum as the judge may order, conditioned for the faithful performance of his trust according to law. As appears from the quotation hereinbefore made, the following implied conditions form a part of the bond: "Second. To dispose of and manage the estate according to law and for the best interest of the ward, and faithfully to discharge his trust in relation thereto, and also in relation to the care, custody, and education of the ward. Third. To render an account, on oath, of the property, estate, and moneys of the ward in his hands, and all proceeds or interest derived therefrom, and of the management and disposition of the same, within three months after his appointment, and at such other times as the court directs, and at the expiration of his trust to settle his accounts with the probate judge, or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys, and effects remaining in his hands, or due from him on such settlement, to the person or persons who are lawfully entitled thereto." Among the powers and duties of the guardian are the following: To pay all debts of the ward out of his personal estate and the income of his real estate, but, if these sources are insufficient, then out of his real estate, upon obtaining an

order for its sale, "and disposing of the same in the manner
provided in this title for the sale of real estate of decedents."
(Section 367); he must, if the income and profits of the estate
be insufficient for the purposes, sell the real estate of his ward
upon obtaining an order of the court therefor, and apply so
much of the proceeds as may be necessary to the maintenance
and support of the ward and his family (Section 369); and
to sell the ward's real estate when it appears for the benefit of
the ward to do so, and put the proceeds out at interest or other-
wise reinvest the same (Section 377). These powers are con-
ferred and these correlative duties are imposed upon guardians
generally, to be exercised and performed whenever the condi-
tions contemplated by the statute arise; in brief, whenever it
appears either necessary or for the benefit of the ward that his
real estate or some part of it should be sold, the court may grant
an order therefor. (Section 386.) To obtain an order to sell,
to sell and to account for the avails of the sale ordered, is one
of the general duties of the guardian. We think the sureties
on such bond of the guardian are liable for any loss which the
ward may suffer by reason of the guardian's failure faithfully
to execute the duties of his trust, among which are those per-
taining to sales of real estate, and that they are, consequently,
liable for his default with respect to the proceeds of such sales.
Section 402 of the Probate Practice Act, Compiled Statutes
of 1887, authorizes the judge to require a new bond to be given
by a guardian whenever he deems it necessary. He may at any
time, even after sale, require a new or additional bond. These
provisions illustrate the design and show the intention of the
legislative assembly in enacting Section 387. This section pro-
vides no penalty for the omission to require or give a special
bond, nor does it declare that the order of sale depends upon
the performance of such a condition subsequent. Nowhere does
the statute declare that if a special bond be not given the sale
shall not be made, or, if made, shall be void. It is not pro-
vided that the order of sale becomes effective only when such
special bond is given. In *Stewart* v. *Bailey,* 28 Michigan Re-

ports 251, the statute required a special sale bond and provided that in case of an action relating to any estate sold by a guardian in which the ward should contest the validity of the sale, the sale should not be avoided on account of any irregularity in the proceedings, provided it should appear, among other things, that the guardian gave a special sale bond. This was tantamount to declaring a sale made without bond to be voidable in such an action, and the court so held. The same statutes governed the decision in *Ryder* v. *Flanders,* 30 Michigan Reports, 336. The interpretation of similar statutes was involved in *McKeever* v. *Ball,* 71 Indiana Reports, 398; *Weld* v. *Johnson Manufacturing Company,* 84 Wisconsin Reports, 537, (54 N. W. 335, 998); in *Bachelor* v. *Korb,* 58 Nebraska Reports, 122, (78 N. W. 485, 76 Am. St. Rep. 70); and in *Goldsmith* v. *Gilliland* (C. C.), 23 Federal Reporter, 645. In *Barber's Administrators* v. *Hopewell* (Ky.), 1 Metcalfe, 260, the statute in force provided that if the guardian failed to give the special bond the sale should not be made, and "any decree, sale, or conveyance thereof shall be void;" and the court held that a sale of lands without giving the special bond rendered the sale a nullity as to the ward. These decisions, owing to the difference between our statutes and those under which they were rendered, are not in point. Other cases seemingly in favor of the defendant's position may readily be distinguished; for example, *Williams* v. *Morton,* 38 Maine Reports, 47 (61 Am. Dec. 229), holds that a conveyance of land by the guardian of a ward, under order of a court of probate, vests no title in the grantee unless the guardian shall have given the sale bond required by statute; but the court so held for the reason that in Maine the general bond of the guardian did not stand as security for the proper application of the proceeds of a sale of real estate. Such was the condition, likewise, in *Vanderburg* v. *Williamson,* 52 Mississippi Reports, 233. This is also the basis of the decision in *Lyman* v. *Conkey* (Mass.), 1 Metcalf, 317.

We are of the opinion that the omission of the court to re-

quire and of the guardian to give the special sale bond in the
case at bar was a mere irregularity in no wise affecting or im-
pairing the jurisdiction of the court which ordered and con-
firmed the sale. As has already been said, the general bond of
the guardian stands as security for the proper application of
the proceeds of the sale; the court was clothed with power to
entertain the petition praying for the sale; it had jurisdiction
of the subject-matter and of the parties; it made the order of
sale; the property was sold, the sale was confirmed, and a con-
veyance executed. The statute omits to denounce as void, for
want of a special bond, a sale made pursuant to such an order.
The sale was not void. Many cases support this conclusion.
In *Palmer* v. *Oakley,* 2 Douglass, 433 (47 Am. Dec. 41), the
following language is used: "The last objection to the regu-
larity of the proceedings by the guardian in conducting the
sale is, that the notice of sale given was insufficient, and was
given before the bond was executed. The statute requires that,
before making sale of any real estate by a guardian, a bond
shall be given with sureties, and thirty days' notice of the in-
tended sale. An oath is also required. The requirement in re-
spect to the bond and notice is contained in a proviso, and may
be considered as a limitation or restriction upon the authority
to sell. But does the neglect on the part of the guardian to
comply with these several provisions of the statute render the
sale absolutely *void,* and can it affect the rights of an innocent
*bona fide* purchaser, claiming through the decree authorizing
the sale? I think the rights of such a purchaser, especially
after the lapse of so many years, are not to be disturbed in
consequence of the failure of the guardian to perform acts *in
pais* subsequent to the decree of sale. The acts of the guardian
are, in legal contemplation, the acts of the ward, whom he
represents; and it cannot now be permitted to the ward to
come in and allege the nonfeasance of his guardian, to disturb
a title derived from him through such, his legally constituted,
representative. All that a purchaser at judicial sale is bound
to look to with a view to his protection is to see that the court

by whom the sale was authorized was empowered to make the decree. If the court had the power, the failure of the guardian, as in this case, to fulfill certain directions which the law imposed on her, should not and cannot prejudice the rights acquired by such purchaser. If the ward is prejudiced by any neglect on the part of the guardian in the execution of the trust reposed in her, his remedy is upon her bond. It never could have been contemplated by the legislature that the validity of a sale should be made to depend upon the observance of those provisions of the law, which are in their nature *directory* to the guardian. If such a rule were to obtain, but few purchasers would be found at judicial sales; for but few would incur the hazard of purchasing and paying their money when the purchase so made may, at the distance of ten or fifteen years, be held void, in consequence of a noncompliance by a guardian with the requisitions of the statute. Such a rule would also operate injuriously on the ward, as upon every sale made the purchaser would take into account the hazard he incurs. The best interests of infants require that no unnecessary obstacles should be thrown in the way of obtaining the best possible price for their estates when sold. If a wrong is done them by their guardians, they have a full and ample remedy. In the case of *Perkins* v. *Fairfield,* 11 Mass. 227, it was held that a failure by an administrator to give the bond required by the act of Massachusetts of 1783 before the sale of real estate of his intestate would not invalidate a title derived through such administrator." In *Bunce* v. *Bunce,* 59 Iowa Reports, 533 (13 N. W. 705), the court said: "The remaining objections—the want of a sale bond, and the alleged want of approval of the sale—may be considered together. The statute provided that, before a sale can be executed, the guardian must give security. (Revision, Sec. 2556.) The statute also required that the sale must be approved. (*Id.* Sec. 2558.) In the absence of a sale bond, it would doubtless be error to approve the sale; but, where jurisdiction has attached, and the sale has been approved, it cannot, we think, be successfully attacked in a collateral pro-

·ceeding by alleging the want of a sale bond. The question raised must be deemed to have been passed on, and whether ·correctly or incorrectly, the court cannot, we think, in a col- ʹlateral action, inquire." This was approved in *Hamiel* v. *Don- nelly,* 75 Iowa Reports, 93 (39 N. W. 210). The same doctrine or principle is announced in *Perkins* v. *Fairfield,* 11 Massa- chusetts Reports, 227 ; *Lockhart* v. *John,* 7 Pennsylvania State Reports, 137; *Merklein* v. *Trapnell,* 34 Pennsylvania State Reports, 42, (75 Am. Dec. 634) ; *Dixey's Executors* v. *Lan- ing,* 49 Pennsylvania State Reports, 143 ; *Foster* v. *Birch,* 14 Indiana Reports, 445 ; *Dequindre* v. *Williams,* 31 In- ·diana Reports, 444. In *Arrowsmith* v. *Harmoning,* 42 Ohio State Reports, 254, · the court, in approv- ing *Mauarr* v. *Parrish,* 26 Ohio State Reports, ·636, said : "The decision in *Mauarr* v. *Parrish* was right. The probate court had jurisdiction of the subject-matter;—*i. e.* it ʹwas clothed with authority to order the sale of the lands of a minor on the petition of his guardian ; and it is fair to say from the record that notice of filing the petition, provided for by the statute, had been served on the minor, before any order was made in the proceeding, in the manner in such statute pro- ·vided; and hence, when the order of sale was made, and also when the sale was confirmed, the probate court had not only jurisdiction of the subject-matter, but also the parties. This being true, the order of sale and the order of confirmation, al- though they may have been erroneous, were not void. 'The judgment or final order of a court having jurisdiction of the ·subject-matter and parties, however erroneous, irregular, or in- formal such judgment or order may be, is valid until reversed ·or set aside,  \*  \*  \*  within which rule the orders of pro- bate courts are classed. .(*Shroyer* v. *Richmond,* 16 Ohio St. 455.) If the judgment or order is erroneous, it may be re- ʹversed; if it is irregular or informal, it may be corrected on ʹmotion; in neither case, however, is it subject to collateral at- ·tack.' (*Wehrle* v. *Wehrle,* 39 Ohio St. 365.) True, *Mauarr* v. *Parrish* is·very briefly reported on the question we are consider-

ing.  But the strength of an opinion is not to be determined from its length.  Frequently cases are disposed of by the application of principles so firmly settled that the citation of authorities in support of them would be a work of supererogation.  The judge delivering the opinion in *Mauarr* v. *Parrish* probably thought the case belonged to that class, and hence the brevity of the report; but the ground of the decision is clearly indicated,—that is, that, the court having jurisdiction of the subject-matter and parties, the order of sale and the order of confirmation, though they may have been erroneous, were not void, —and that is sufficient.  The record and a brief on each side of the case have remained on file in this court, and we have no doubt that the question received the careful consideration, as in its decision, in the way stated, it received the concurrence, of every member of this court.  And although cases in apparent opposition to *Mauarr* v. *Parrish* have been cited, yet nearly all of them are clearly distinguishable from it, when regard is had to the statutes on which they were based; and *Mauarr* v. *Parrish* is fully supported by *Watts* v. *Cook,* 24 Kan. 278; *Bunce* v. *Bunce,* 59 Iowa 533, 13 N. W. 705; *Lockhart* v. *John,* 7 Pa. St. 137; *Merklein* v. *Trapnell,* 30 Pa. St. 42; *Appeal of Thorn,* 35 Pa. St. 47; *Dixcy's Ex'rs* v. *Laning,* 49 Pa. St. 143." *Watts* v. *Cook,* 24 Kansas Reports 278, is also directly in point.  The statute of Kansas (Comp. Laws 1879, c. 46. Sec. 15) provided that before any guardian's sale of lands "can be made or executed, the guardian must give security to the satisfaction of the court, the penalty of which shall be at least double the value of the property to be sold,  \*  \*  \*  conditioned that he will faithfully perform his duties in that respect, and account for and apply all moneys received by him under the direction of the court."  It was said (Mr. Justice Brewer, Mr. Chief Justice Horton, and Mr. Justice Valentine, composing the court) : "The authorities differ as to the validity of guardians' sales in the absence of security.  Some hold such sales void (*Williams* v. *Morton,* 38 Me. 47, 61 Am. Dec. 229); and others merely erroneous (*Lockhart* v. *John,* 7 Pa. St. 137;

*Perkins* v. *Fairfield,* 11 Mass. 227; *Foster* v. *Birch,* 14 Ind. 445). We are inclined to believe the latter the true rule. Probate courts should cautiously observe the provisions of the section quoted, and are greatly negligent in permitting sales on mortgages by guardians without security; yet we cannot hold that the failure to give security deprives the court of jurisdiction. It is an error of a court having competent and full jurisdiction, subject to reversal or avoidance by due proceedings. The absence of the security did not render the proceedings void, but only irregular." This case was approved in *Howbert* v. *Heyle,* 47 Kansas Reports 58 (27 Pac. 116), although the judge writing the opinion entertained the view that the decision in *Mauarr* v. *Parrish* was against the great weight of authority.

We are satisfied, upon reason as well as by the weight of authority, that the provisions of Section 387 are directory, and hence that the sale was not void because the guardian omitted to give the special bond required thereby. The judgment must therefore be reversed and the cause remanded with directions to the court below to render judgment in favor of the plaintiff, and it is so ordered.

*Reversed and remanded.*