SWANBERG, Administrator, Respondent, *v.* NATIONAL SURETY CO., Appellant.

(No. 6,519.)

(Submitted November 16, 1929. Decided January 7, 1930.)

[283 Pac. 761.]

*Messrs. Stewart & Brown,* for Appellant, submitted an original and a supplemental brief; *Mr. John G. Brown* argued the cause orally.

*Mr. H. Norskog,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal by the National Surety Company from a judgment in favor of the plaintiff, A. V. Swanberg, as administrator of the estate of Maude Hedrick, deceased, for the full amount of the general bond of a former administrator of the same estate, with interest and costs, entered upon a finding that the original administrator had converted and lost to the estate the real and personal property entrusted to his care.

The record is wholly documentary; it consists of the files in the estate matter and judgment-rolls in certain pertinent actions. From this record the following facts appear:

On November 8, 1916, Maude Hedrick and Henry C. Hedrick, her husband, mortgaged the Maude Hedrick ranch to the Wells-Dickey Company, to secure the payment of a note for $2,300 payable December 1, 1921. Maude Hedrick died intestate January 13, 1919, leaving an estate consisting of the mortgaged ranch, with livestock and farm machinery thereon, and leaving surviving her, in addition to her husband, two minor children, the issue of a former marriage and one the issue of her marriage to Hedrick.

Henry C. Hedrick was appointed administrator of his wife's estate and, on qualifying, furnished a bond in the penal sum of $4,000 on which the National Surety Company was surety. The property was duly inventoried and the real estate was appraised at $12,468.30 and the personal property at $1,760. Thereafter the administrator petitioned for an order of sale

of both the personal and real property, showing to the court that the debts of the estate and cost of administration, including "mortgage on real estate $2,300," exceeded $4,000, while the personal property in his hands then had a value of but $815. On this showing the order was made May 13, 1920, and therein the administrator was required to file an additional bond of $15,000 before making sale. According to the testimony of an attorney then acting for the estate, nothing was done under the order of sale, as the administrator was unable to secure the additional bond. However, it appears that some time prior to May 7, 1921, the administrator changed attorneys, and, on the date last mentioned, he entered into a contract for the sale of the real and personal property of the estate to Joseph and Anna McClintock for the agreed price of $14,020, the consideration to be evidenced by a mortgage for $8,000 on the ranch, a mortgage for $4,000 on city property owned by the McClintocks, and the balance "to be paid" by assignment of a lease on the Belmont Hotel, in Great Falls, and transfer of title to the furnishings and fixtures of the hotel, subject to a chattel mortgage for $3,000; it being agreed that, as the existing mortgage on the ranch had not matured, the amount due thereon should be deducted from the $8,000 mortgage note to be given, in the event the administrator did not satisfy that mortgage when the amount became due.

This agreement provided that "possession" of the ranch, with the personal property thereon, should be delivered to the contractees as soon as they delivered possession of the hotel, but it was understood and agreed that an order of court confirming the sale, when made, would be necessary in order to pass title to the ranch. On May 10, 1921, the administrator wrote the McClintocks, on stationery of his then attorney, authorizing them to take possession of the ranch and advising them that "as soon as possible I will arrange to obtain orders of court permitting sale to you and confirming said sale in accordance with said contract."

No order of sale was thereafter obtained and, while the McClintocks evidently took and remained in possession of the

ranch property and Hedrick of the hotel, it does not appear that the mortgages mentioned in the contract were ever executed.

On October 13, 1923, an assignee of the Wells-Dickey Company instituted foreclosure proceedings on the Maude Hedrick ranch and therein secured judgment against Hedrick, individually and as administrator of his wife's estate, for $4,212.25 and decree of foreclosure under which the property was sold to the plaintiff. No redemption being had, sheriff's deed followed. The McClintock chattel mortgage on the hotel fixtures was also foreclosed and title passed to the purchaser at foreclosure sale.

In 1924 Hedrick rendered his first account in the estate matter, in which he showed receipts in 1919 from sale of cattle amounting to $1,042.72 and from sale of cream $452.50, and disbursements amounting to $1,409.14, leaving a balance cash on hand of $86.08. Therein no mention is made of his transactions with the McClintocks in 1921, nor is there any explanation of the absence of receipts from estate property after 1919. The account was approved and settled.

In June, 1926, Earl McLeish, one of the heirs, then twenty-two years of age, petitioned for an order requiring the administrator to account, and, in response to a citation issued, Hedrick filed a purported final account and petition for distribution, in which he sets out the balance of cash on hand as shown in his first account, and then recites "following personal property sold as per contract hereto annexed" (the McClintock contract), being horses valued at $715 and farm machinery valued at $100. He then described the real estate, followed by the statement that it was mortgaged for $2,300, due December 1, 1921, which mortgage was foreclosed in 1924; reference being made to the judgment-roll in that proceeding. The report then recites that the administrator "received as a consideration for said sale of the above described personal and real property, the furniture, fittings and equipment of the Hotel Belmont * * * upon which there was a mortgage of $3,000; that said mortgagee subsequently foreclosed the

mortgage * * * and said Hedrick saved nothing as a result of said sale.'' He reported certain debts outstanding, principally for attorney's fees, and no property in his hands.

McLeish filed objections to this report, and a hearing was had, which resulted in the court's finding that Hedrick had "converted and lost" to the estate both the real estate and personal property, the former being of a value of $12,486.30 and the latter of a value of $815, but that the administrator was entitled to credit for $500 attorney's fees, $2.50 filing fees, and the principal sum of the mortgage note for $2,300. The report was rejected, and the court declared that there was a balance due from Hedrick to the estate of $10,536.26. Thereafter, on petition of McLeish, Hedrick was removed and this plaintiff appointed as administrator of the estate.

This action was then brought to recover the amount found due the estate, from Hedrick and the surety on his general administrator's bond; it resulted in judgment against the surety company for the full amount of its obligation, $4,000, with interest in the sum of $628.44, and the costs of suit.

The defendant National Surety Company, through counsel having nothing to do with the probate proceeding, has appealed from the judgment, asserting that it is willing to submit to judgment for the value of the personal property, less the deductions allowed by the court on the hearing on the administrator's report, which would be but $367.96, but contending that it is in nowise liable for the loss of title to real estate, and therefore the judgment for the full amount of the penalty in the bond, with interest, is erroneous. The position taken is based upon the assertion that the record in the probate proceeding, on which the order surcharging the administrator was made, shows that the property was not lost, converted or wasted by reason of his dealing with the McClintocks, but was, in fact, wiped out by the foreclosure proceedings instituted by the mortgagee. Counsel for the surety company contend that the sole question presented is: "Can the qualifying bond of an administrator be held for the value of real property which was sold under foreclosure proceedings?"

Counsel for plaintiff challenges this statement, contending that the property was lost, converted and wasted prior to the commencement of that action, and asserting that two questions are presented: (1) As to whether or not the bond is liable for the loss of the real estate in the manner stated and for the proceeds "received by the administrator for the embezzlement," and (2) "is the judgment, or order in the probate proceedings, finding the amount due the estate from the administrator, conclusive upon the surety company?"

1. We will first dispose of the question as to the effect of the order surcharging the administrator's account.

A careful consideration of the authorities discloses that, ▮ except for the decisions in certain of the southern states holding that a surety is not in privity with his principal on such a bond (*Lucas* v. *Guy*, 2 Bail. (S. C.) 403; *Bryant* v. *Owen*, 1 Ga. 355; *Lipscomb* v. *Postell*, 38 Miss. 476, 77 Am. Dec. 651), and the few cases holding that such a judgment or order is but prima facie evidence against the surety, doubtless based upon particular statutes (*Means* v. *Hicks*, 65 Ala. 241; *Gillespie* v. *Riggs*, 253 Fed. 943, 165 C. C. A. 385, Id., (D. C.) 248 Fed. 843), it is universally held that administration bonds form an exception to the general rule that sureties are not concluded by judgment against their principal unless they have had their day in court, and that, with respect to this class of bonds, the surety is in privity with the principal and is, therefore, bound and concluded by a judgment or order, made after hearing had, fixing the amount due from the principal to his estate, although the surety was not a party to the action or had no notice or knowledge of the hearing, and therefore cannot collaterally attack the judgment or order or question its correctness as to fact conditions or the justness of the claim on which it was founded, except for collusion or fraud or, possibly, on the ground that the principal permitted the matter to go by default (2 Woerner on American Law of Administration, 3d ed., 838, and cases cited; 11 R. C. L. 302; *Weyant* v. *Utah Savings & Trust Co.*, 54 Utah, 181, 9 A. L. R. 1119, 182 Pac. 189; *Shipman* v. *Brown*, 36 Okl.

623, 130 Pac. 603; *Proctor* v. *Dicklow,* 57 Kan. 119, 45 Pac. 86; *Pierce* v. *Maetzold,* 126 Minn. 445, 148 N. W. 302; *Planters' Mutual Ins. Assn.* v. *Harris,* 96 Ark. 222, 131 S. W. 949; *Allen* v. *Puritan Trust Co.,* 211 Mass. 409, L. R. A. 1915C, 518, 97 N. E. 916).

This doctrine seems to be founded upon the terms of the obligation into which the surety enters. (12 Cal. Jur. 302.) It has been applied in this state in actions wherein the bond was clearly liable for the amount actually due the estate. (*Botkin* v. *Kleinschmidt,* 21 Mont. 1, 69 Am. St. Rep. 641, 52 Pac. 563; *Kenck* v. *Parchen,* 22 Mont. 519, 74 Am. St. Rep. 625, 57 Pac. 94; *In re Smith's Estate,* 60 Mont. 276, 199 Pac. 696; *Baker* v. *Hanson,* 72 Mont. 22, 231 Pac. 902.)

As a result of this rule, the surety, when sued, is not permitted to make any defense against the judgment or order of the court fixing the liability of the principal "which the administrator might have made." (2 Woerner on American Law of Administration, 1363.) In other words, the rule of *res adjudicata* applies. The order is an appealable order (sec. 9731, Rev. Codes 1921), and, whether or not the surety is a "party aggrieved" within the meaning of section 9730, Id., it could have protected itself by motion, in the probate proceedings, to correct the order, if it deemed it erroneous, and therefore, on failure so to do, as a privy to the principal, it can no more be permitted to attack the order collaterally than can the administrator himself (*Pierce* v. *Maetzold,* above; *First Trust & Savings Bank* v. *United States Fidelity & Guaranty Co.,* 156 Minn. 231, 194 N. W. 376).

If this question were before us on appeal from the order in the probate proceeding, or from an order refusing to correct that order, we might agree with counsel for the surety that the real estate could only have been lost to the estate by reason of the foreclosure of the pre-existing mortgage, as *title* to real property does not come into the hands of an administrator but passes to the heirs immediately on the death of the ancestor, subject only to the control of the court for the purposes of administration (*Lamont* v. *Vinger,* 61 Mont.

530, 202 Pac. 769; *In re Estate of Deschamps,* 65 Mont. 207, 212 Pac. 512), and even when it becomes necessary to sell real property for the payment of debts under the authority of section 10210, Revised Codes 1921, the rule of *caveat emptor* applies (*In re Dolenty's Estate,* 53 Mont. 33, 161 Pac. 524; 11 Cal. Jur. 952), and it is only when a sale is "legally made" that the court is authorized to confirm it (sec. 10227, Rev. Codes 1921), then it is not the act of the administrator in making the sale, but the confirmation by the court which operates to divest the heirs of their title (*Plains Land & Improvement Co.* v. *Lynch,* 38 Mont. 271, 129 Am. St. Rep. 645, 99 Pac. 847).

However, under the rule above, to which we must adhere, all questions as to the correctness and sufficiency of the order determining the liability of the administrator are foreclosed to this surety by its failure to appeal from the order, cause the administrator to take an appeal or move in the probate proceeding for a correction of the order; but, granting that the administrator is liable to the estate for the loss of the real estate through his bad faith or lack of due procedure, conditions which render such a representative liable (24 C. J. 123–125), and has been properly charged in his account with a sum in excess of $10,000, there is nothing in the judgment or order under consideration holding or intimating that the surety on his qualifying bond is likewise liable.

Sureties are entitled to stand upon the precise terms of their contract and, as the bond is limited to the duties cast upon the principal, the liability of the surety cannot be extended; they are responsible only for the faithful performance of such duties as are imposed upon the principal as representative and do not undertake for the faithful performance of duties as an agent or trustee (12 Cal. Jur. 297), and for loss of real property as administrator may be responsible to the heirs directly, as agent or trustee, dehors his official status (3 Woerner on American Law of Administration, 1771) and, while it is a general rule that sureties are liable on the bond whenever the principal is liable, "it does not follow

that there can always be a recovery * * * against the sureties whenever there can be a recovery against the principal, for although, as respects the act or default which constitutes the cause of action, their liability may be the same, he may in certain cases, be estopped by some act or omission from making a defense which is open to them.'' (Note, 51 Am. Dec. 519.)

It follows that, although the surety is estopped from in any manner questioning the integrity of the order fixing the liability of the administrator, it was entitled to assert its nonliability, under the terms of the bond furnished on qualifying, for the loss of title to the real estate.

2. For what, then, did the surety undertake, with reference to the acts of the administrator concerning the real estate of which the intestate died seised, subject to mortgage to secure the payment of $2,300, but of a value of more than $12,000?

We must consider this question giving full credit to the findings of the court in a matter wherein it had before it the matter of the administrator's dealings with the McClintocks, the foreclosure proceeding showing that there was no redemption of the property and that the title was finally and irretrievably lost on issuance of sheriff's deed, and the proceedings in the probate matter showing that the court had ordered a sale of the property for the purpose of paying, among other debts, the mortgage note. Therein the court found that the administrator had entered into a conspiracy to defraud the estate and by its consummation all of the assets of the estate had been lost through the bad faith and lack of due prudence of the administrator, the court declaring that ''the administrator has in every way failed to exercise in any degree that high integrity which the law demands of an administrator.''

The liability of a bondsman is measured by his covenant, the condition, and the statutes of the state relating to the bond and to the duties of the principal, and although there should be no tenderness shown a company organized to act as surety for hire, it being paid to take the risk and,

presumably, charging a premium which experience has taught is sufficient for the purpose, its contract is, nevertheless, subject to the same rules of construction as any other contract, for the purpose of giving effect to the intention of the parties. (*Gary Hay & Grain Co.* v. *Carlson,* 79 Mont. 111, 255 Pac. 722.)

The law requires the administrator, on qualifying, to furnish a bond conditioned that he will "faithfully execute the duties of the trust according to law" (sec. 10090, Rev. Codes 1921), the penalty thereof to be fixed at not less than, nor more than double, "the value of the personal property and the annual rents and profits of real property" (sec. 10088, Id.). The bond in suit provides that: "If the said Henry Hedrick shall well and faithfully execute the duties of said trust according to law, and shall well, truly and faithfully perform all the official duties now required by law * * * and shall account for and pay over * * * all moneys or other property that may come into his hands as such administrator, then this obligation to be void, otherwise to remain in full force and effect."

Having filed this bond and his oath of office, the administrator became "entitled to the possession of all the real or personal estate of the decedent, and to receive the rents and profits of the real estate until the estate is settled, or until delivered over by order of the court." (Sec. 10138, Id.)

"Section 10257, and section 10282 [Rev. Codes 1921] reiterate the authority given * * * in section 10138 to take into his possession all of the estate of the decedent, real or personal, and make it his duty so to do, and charge him with the whole of the estate * * * which may come into his possession." (*In re Bradfield's Estate,* 69 Mont. 247, 221 Pac. 531, 535. See, also, *In re Jennings' Estate,* 74 Mont. 449, 241 Pac. 648.)

The bond is liable, in so far as accounting for property is concerned, for that which actually comes into the hands of the administrator (*McCauley* v. *American Surety Co.,* 81 Mont. 161, 263 Pac. 90) and that which, in the performance

of his duties, he should have reduced to possession but did not (*In re Dolenty's Estate,* above).

The common-law rule, which is still the general rule, ██ is that title to personal property of the decedent, testate or intestate, vests in the personal representative until the administration is completed (24 C. J. 201), but *title* to real property, in this state, passes immediately to the heirs, as stated above, the administrator receiving but the possession thereof and the rents and profits therefrom. However, real estate may be included in the "assets" of the estate, as that term is defined to mean "all of the estate which may be subjected to the payments of the debts and which the administrator takes as such." (*Commissioners Freedman's Savings & Trust Co.* v. *Earle,* 110 U. S. 710, 28 L. Ed. 301, 4 Sup. Ct. Rep. 226; *People* v. *Brooks,* 123 Ill. 246, 14 N. E. 39; *Barnard* v. *Bilby,* 68 Okl. 63, 171 Pac. 444; *Kietzer* v. *Nelson,* 157 Minn. 463, 196 N. W. 641.)

In this state all the property of the decedent is chargeable ██ with the payment of the debts of the deceased and expenses of administration, except as otherwise provided in the Codes, exempting certain property, and both real and personal property may be sold for this purpose; no distinction or priority is to be observed. (Sec. 10195, Rev. Codes 1921.) When it becomes necessary that property shall be sold, an order of court must be obtained, whether the property be real or personal; if personal property is to be sold no additional bond is required, as the qualifying bond, having been fixed with regard to the value of the personal property and the rents and profits from real estate, is ordinarily sufficient, but, ordinarily an additional bond is required on order of sale of real property. This, however, is not by reason of any distinction between the two classes of property, but because the proceeds to be realized will increase the amount of money coming into the hands of the administrator beyond the amount covered by the bond, in the majority of cases; this is not necessarily so and if, on making an order of sale, the court finds that the penalty of the qualifying bond is sufficient to

cover double the amount of personal property still in the hands of the administrator, the rents and profits of real property, and the probable proceeds of the sale of the real property, no additional bond need be required. (Sec. 10089, Rev. Codes 1921.)

Thus it is seen that the qualifying bond may, in any case, be wholly responsible for the proceeds of the sale of real estate and, as the bond is given in contemplation of the statutes which form a part of it, it must be deemed that the surety entered into the contract undertaking that, if a sale of real estate becomes necessary, it will be responsible for the proper accounting for such proceeds, in case its bond is found to be sufficient. Even when an additional bond is required, the qualifying bond is jointly liable with it for such proceeds. (*Hughes* v. *Goodale,* 26 Mont. 93, 91 Am. St. Rep. 410, 66 Pac. 702; *Baker* v. *Hanson,* above.)

All of the property, real and personal, of the decedent comes into the possession of the administrator, on qualifying; he must inventory it (sec. 10129, Rev. Codes 1921), and is chargeable in his account with the whole value thereof, except in certain instances where not recoverable through no fault of the administrator (secs. 10282 and 10284, Id.), and if a sale is ordered and there is any neglect or misconduct in the proceedings in relation to any sale, by which a party interested in the estate suffers damage, the party aggrieved may recover the same in an action on the bond of the administrator (sec. 10243, Id.).

The duties imposed upon an administrator, on qualifying, are to collect and take into possession the assets of the estate, pay the debts of the decedent and the costs of administration, conserve and protect the property in his possession, settle the estate without undue delay, and distribute the surplus. (*In re Willey's Estate,* 140 Cal. 238, 73 Pac. 998.) He has exclusive control over the entire property of the estate (*Murphy* v. *Nett,* 51 Mont. 82, L. R. A. 1915E, 797, 149 Pac. 713), and, in performing his duty to protect the property in his possession and under his control, may main-

tain actions for waste or trespass on the real property (sec. 10259, Rev. Codes 1921).

An administrator is bound to settle the estate with reference to the situation of the assets at the time of the death of the decedent, and must not attempt by trade or speculation to adjust its affairs on a different basis. (*Hayes* v. *Rich*, 101 Me. 314, 115 Am. St. Rep. 314, 64 Atl. 659.)

The proper performance of all duties imposed upon the administrator, on qualifying, comes within the condition of his qualifying bond.

In the performance of the administrator's duty to pay the ▇ debts of the decedent, he is authorized, if there be not sufficient funds in his hands, to resort to any one of three methods of raising money for this purpose: First obtaining an order of the court therefor, he may borrow money on the credit of the estate (sec. 10196, Rev. Codes 1921); he may sell the property of the estate (secs. 10195 and 10210, Id.), or he may mortgage the real estate (sec. 10249), and, when necessary to raise money for the payment of such debts, it is the duty of the administrator to take all necessary steps for that purpose. (11 R. C. L. 150–161; 11 Cal. Jur. 1017; *Estate of Porter*, 129 Cal. 86, 79 Am. St. Rep. 78, 61 Pac. 659; *In re Freud*, 131 Cal. 667, 82 Am. St. Rep. 407, 63 Pac. 1080.)

The mortgage note given in the lifetime of the decedent was a debt of the decedent, and in addition it was secured by mortgage on the real property in charge of the administrator; so here there was a double duty imposed upon the administrator: To pay the debt and to protect the property by discharging the lien, if, in his judgment, value could thereby be saved to the estate. (*In re Freud*, above; *In re Delaney's Estate*, 41 Nev. 384, L. R. A. 1918D, 1022, 171 Pac. 383.) Even after the mortgage was foreclosed for approximately one-third of the value of the real estate, the right of redemption was in the administrator (*Collins* v. *Scott*, 100 Cal. 446, 34 Pac. 1085), and again he had ample authority to protect the estate from loss.

If, as stated by his then counsel, the administrator could not proceed with a sale of the property, or the whole thereof, because he could not secure the necessary additional bond, he might have secured an order of sale of less than the whole property and had the amount of the bond reduced, or he might have secured an order to mortgage the property or to borrow the money necessary to satisfy the mortgage. If he had a reasonable excuse for not doing any of these things, that excuse should have been presented on the hearing in the probate proceeding, and is foreclosed here.

An administrator is bound to exercise that degree of care and diligence which prudent and judicious men ordinarily bestow upon their own important affairs (*McNabb* v. *Wixom*, 7 Nev. 171), and those who have become their security for the faithful performance of his duties must see that he performs them at their peril (*Union Stockyards Co.* v. *Westcott*, 47 Neb. 300, 66 N. W. 419).

Now, as it was the duty of the administrator to protect the real estate coming into his possession and to pay the debts of the decedent and to discharge liens upon the property, if for the interest of the estate it was advisable, and as the property was valued at more than $12,000 and the lien was but for $2,300 and accrued interest and the heirs were minors, it would seem that the real estate should have been saved to the estate. The court found that the failure of the administrator to so do was through fraud and conspiracy and in utter disregard of his duty, and the surety here permitted the judgment to become final and conclusive on these matters and is now estopped to contend otherwise. Under the circumstances the bond was liable to its full extent, as declared by the court.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES FORD and ANGSTMAN, and HONORABLE WILLIAM L. FORD, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.