(No. 6513. June 4, 1938.)

HOOD HILL, Appellant, v. FEDERAL LAND BANK, a Corporation, Respondent.

[80 Pac. (2d) 789.]

John L. Black and Roy L. Black, for Appellant.

138

B. W. Davis, for Respondent.

AILSHIE, J.—This action was commenced by appellant, Hood Hill, whom we will hereafter refer to as plaintiff, against respondent, Federal Land Bank, to which we will hereafter refer as defendant, and also against Guy Hill, Delilah Hill, his wife, Stanley Hill and Gladys Hill, his wife, and the Hill Sheep Company, a corporation. None of the defendants was served except the Federal Land Bank and no one appeared or answered excepting the bank. The action is prosecuted against the Land Bank seeking a decree cancelling and setting aside a decree of foreclosure and sale of certain real property, on the ground that fraud was perpetrated on the probate court in procuring a confirmation sale made by plaintiff's guardian, and on account of irregularities occurring in the probate proceedings, of which it is alleged the defendant had knowledge. Judgment was entered for the defendant and the plaintiff has appealed.

Plaintiff's mother died May 14, 1927, while he was yet a minor, and left surviving her three sons and two daughters. She left a will which was subsequently probated, and by the terms thereof, and the subsequent decree of distribution in conformity therewith, plaintiff was left an undivided one-fourth interest in a part of the real estate and an undivided one-eighth interest in another part of the property, and also

an undivided interest in the livestock business in which the mother and Guy and Stanley Hill were then engaged.

In April, 1929, the business was in a bad financial way with indebtedness of mortgages and liens against the real estate, to the extent of about $12,000, and like obligations against the personal property amounting to about $23,000; and it became imperative that they take care of some of these obligations; and plaintiff, who was then past sixteen years of age, filed petition in the probate court of Bear Lake county, praying that his brother, Guy G. Hill, be appointed as guardian of his estate. The appointment was made and thereupon the guardian gave a guardian's bond in the sum of $5,000. Thereafter and in August of the same year the guardian petitioned the probate court for leave to sell at private sale all of plaintiff's interest in the real estate and likewise in the personal property. The order was granted and he thereafter received a bid from Stanley A. Hill, brother of plaintiff and the guardian, offering the sum of $2,000 for all of plaintiff's interest in the property, and he, Stanley, would assume the indebtedness against the property. In other words, that $2,000 was to be net to the estate over and above the indebtedness existing against the minor's share in the property. The sale was duly reported to the court and upon a hearing regularly had the probate court entered an order approving the sale and reciting, among other things:

"And the Court being satisfied after careful examination that the best interest of the said minor and his estate would be conserved by the said sale, and that said sale was necessary to protect the equity of said minor in said property, and his interest therein; and for the other purposes as set forth in said guardian's petition."

The decree of the court also contained the following statement:

"That the said guardian having already given bond in the sum of Five Thousand Dollars, as guardian to said minor, it is ordered that no further bond be required from said guardian in the premises."

It is further charged and stands admitted that the purchaser, Stanley, never in fact paid to the guardian the $2,000,

but on the contrary gave the guardian his promissory note for that sum which has never been paid. But this fact does not appear ever to have been brought home to the knowledge of either the probate court or the defendant herein.

 Deed was duly executed by the guardian to purchaser, Stanley Hill, and placed of record. Thereafter the two brothers, Stanley and Guy, made application to defendant, the Federal Land Bank of Spokane, for a loan of $11,000; and subsequently the loan was allowed and a mortgage was duly executed, in favor of the bank to secure the amount of the loan, and covered all the real property which formerly belonged to plaintiff, and which had been sold by his guardian to his brother Stanley. The probate court proceedings, so far as disclosed by the record here, were regular and furnished no cause to arouse the suspicion of a prospective purchaser or mortgagee of the property, unless the contention of appellant is correct, that the giving of a special bond, under sec. 15–1833, I. C. A., is mandatory and jurisdictional and that a sale made without such bond is void. Before passing to the consideration of this latter contention, we pause to note the position taken by appellant, that ''a guardian's sale of real estate is a judicial sale and that the rule of *caveat emptor* applies.'' Such appears to be the prevailing rule. (*Glover v. Brown*, 32 Ida. 426, 184 Pac. 649; *Dormitzer v. German Sav. & Loan Soc.*, 23 Wash. 132, 62 Pac. 862, 891, affirmed 192 U. S. 125, 24 Sup. Ct. 221, 48 L. ed. 373.) That rule, however, does not require a mortgagee of lands, formerly purchased by the mortgagor at guardian's sale, to go beyond the record and investigate extrinsic facts and circumstances, covering the guardian's sale, which the record or actual knowledge does not reasonably require a prudent man to investigate in ordinary business transactions. In other words, whatever is notice enough to excite the attention of a man of ordinary prudence and prompt him to further inquiry, amounts to notice of all such facts as a reasonable investigation would disclose.

 It seems well established that a purchaser at guardian's sale, and likewise a subsequent purchaser from him, is not bound to follow the purchase money and see that it is

properly applied; or, in case of a subsequent purchaser, that the original purchaser actually paid the purchase price. (*Federal Land Bank of Omaha v. Tuma*, 116 Neb. 99, 216 N. W. 186, 56 A. L. R. 186; *Scott v. Abraham*, 60 Okl. 10, 159 Pac. 270.) The guardian's bond is given for just such purposes. (*Short v. Thompson*, 56 Ida. 361, 55 Pac. (2d) 163; *Hughes v. Goodale*, 26 Mont. 93, 66 Pac. 702, 91 Am. St. 410; *Southern Surety Co. v. Burney*, 34 Okl. 552, 126 Pac. 748, 43 L. R. A., N. S., 308.)

It is now urged that failure on the part of the probate court to require a sale bond, under sec. 15–1833, before confirming the sale, was jurisdictional and rendered the order of confirmation and the sale void. We must approach this matter, having in mind the fact that the probate court is a constitutional court vested with exclusive original jurisdiction to deal with and pass upon all matters of guardianship. (Const., art. 5, sec. 21; *Short v. Thompson, supra.*) Here the court had jurisdiction of the subject matter and of the parties. The court did not ignore the statute requiring a sale bond but decided, judicially, that since the guardian already had on file a bond for $5,000, conditioned for the faithful discharge of his trust, binding on principal and surety, under all the obligations of sec. 15–1808, I. C. A., it would be unnecessary to require a further bond on this $2,000 sale.

Section 15–1833, I. C. A., which requires a bond on guardian's sale, provides as follows:

"Every guardian authorized to sell or mortgage real estate must, before the sale or mortgage is confirmed, give bond to the ward, with sufficient surety, to be approved by the court, with condition to account for the proceeds of the sale or mortgage as provided for in this chapter and chapter 7 of title 15 of this code."

Though the statute is in mandatory language, it nevertheless confers a discretion on the court to approve the bond and necessarily, in so doing, *to determine the amount* of the bond and the *sufficiency of the surety*. The right to exercise discretion involves the power to commit error. The condition required of the bond is that the guardian will "account for

the proceeds of the sale or mortgage.'' We have heretofore held, in *Short v. Thompson, supra,* to the effect that a guardian's general bond covers and secures all moneys received from any source which would include a sale of any of the real and personal property of the ward.

Montana has a statute prescribing the form of bond required to be given by a guardian on his appointment and qualification as such, which is in the identical language of our sec. 15–1808, I. C. A. In *Hughes v. Goodale,* 26 Mont. 93, 66 Pac. 702, 91 Am. St. 410, the Supreme Court of Montana was called upon to determine whether or not the sale made by a guardian, *without giving the special bond* required by their statute (sec. 358, Prob. Prac. Act, Mont. Comp. Stat. 1887) passed title to the purchaser. The court gave the question a very thorough and detailed examination and, after doing so, reached the following conclusion:

''We are of the opinion that the omission of the court to require and of the guardian to give the special sale bond in the case at bar was a mere irregularity in nowise affecting or impairing the jurisdiction of the court which ordered and confirmed the sale. As has already been said, the general bond of the guardian stands as security for the proper application of the proceeds of the sale. The court was clothed with power to entertain the petition praying for the sale. It had jurisdiction of the subject-matter and of the parties. It made the order of sale. The property was sold, the sale was confirmed, and a conveyance executed. The statute omits to denounce as void, for want of a special bond, a sale made pursuant to such an order. The sale was not void. Many cases support this conclusion.'' (Cited with approval in *Swanberg v. National Surety Co.,* 86 Mont. 340, 283 Pac. 761, 768.)

This case has been frequently cited and followed.

Section 5479, Compiled Laws of Oklahoma, 1909, is an exact copy of our statute (15–1808). In *Southern Surety Co. v. Burney,* 34 Okl. 552, 126 Pac. 748, 43 L. R. A., N. S., 308, the Supreme Court of Oklahoma was called upon to determine the validity of a sale made by a guardian, without giving the ''sales bond,'' and the liability of a surety com-

pany on the guardian's general bond as such. The court reviewed a great many authorities and quoted with approval from *Hughes v. Goodale, supra,* and concluded by holding that the general bond required of a guardian is intended to secure to the infant the proper accounting for all funds from whatever source they may be derived that may come into the hands of the guardian; that the special or "sales bond" required by the statute is only cumulative security, required and given for the benefit of the ward; and that a failure on the part of the guardian to account for the proceeds of the sale of real estate will not excuse or absolve his sureties on his original or general guardian's bond. The court concludes its opinion by saying: "This much is certain: The surety on the general bond of a guardian is bound for every class and kind of his ward's estate that may or should come into the guardian's hands, including his misfeasances and nonfeasances."

A similar holding has been made by other courts under the same or parallel statutes: *Carolina v. Montgomery,* 74 Okl. 121, 177 Pac. 612; *Southwick v. Jones,* 177 Okl. 409, 60 Pac. (2d) 774; *Arrowsmith v. Harmoning,* 42 Ohio St. 254; *McCamy v. Payne,* 94 Fla. 210, 116 So. 267; *Hamiel v. Donnelly,* 75 Iowa, 93, 39 N. W. 210; *Frederickson v. American Surety Co.,* 135 Minn. 346, 160 N. W. 859.

We are not unmindful of the fact that there are decisions to the contrary, but an examination of such cases will disclose that in almost every one of them a statute was involved which varies considerably from our statute. The following illustrate some of them: In *Barnett v. Bull,* 81 Ky. 127, the statute provides: "If the bond be not given, any order of sale, and any sale or conveyance made under such order, shall be absolutely *void and of no effect."*

In Michigan (*Stewart v. Bailey,* 28 Mich. 251), Indiana (*McKeever v. Ball,* 71 Ind. 398), Wisconsin (*Weld v. Johnson Mfg. Co.,* 84 Wis. 537, 54 N. W. 335), and *Nebraska* (*Bachelor v. Korb,* 58 Neb. 122, 78 N. W. 485, 76 Am. St. 70), they considered statutes substantially as follows:

"In case of an action relating to any estate sold by a guardian under the provisions of this chapter, in which the ward,

or any person claiming under him, shall contest the validity of the sale, the same shall not be avoided on account of any irregularity in the proceedings, *provided it shall appear:* . . . *That he gave a bond which was approved by the judge of probate,* in case any bond was required by the court upon granting the license.''

In Maine (*Williams v. Morton,* 38 Me. 47, 61 Am. Dec. 229), Nevada (*Henderson v. Coover,* 4 Nev. 429), and Mississippi (*Rucker v. Dyer,* 44 Miss. 591), it has been held that a guardian's general bond does not cover or secure the payment of money realized by a guardian from a sale of real estate, and for that reason it is held in those states that, unless a special bond on sale be required, the ward would have no security at all for the money realized from a sale of his real estate.

It seems clear to us that the purpose of our statute (sec. 15–1833, *supra*) was to make sure that the guardian would be under sufficient bonds at all times to secure all moneys that might come into his hands; and it was evidently thought by the legislature that the general bond might not be large enough to cover the sale of real estate. The real purpose is to secure the estate of the minor against loss. Apparently that object has been attained here, in so far as the giving of a bond is concerned, for the reason that it is admitted that the guardian was under a $5,000 bond which was in full force and effect during all the times mentioned. If in fact the guardian failed to collect from the purchaser the $2,000 purchase price of the minor's interest in the estate, his general bond is ample to protect the estate against his misfeasance or nonfeasance. We are not prepared to hold that the failure of the probate judge to require a special bond, under these circumstances, was such an error or irregularity as to render the sale void.

The judgment should be affirmed and it is so ordered with costs to respondent.

Budge and Givens, JJ., concur.

MORGAN, J.—I concur in the conclusion. The probate court had jurisdiction of the parties and of the subject matter; also jurisdiction to make the order confirming the sale. No appeal was taken and that order became, and is, binding on all parties to the proceeding, including appellant, who was represented by his guardian and who does not contend his guardian defrauded him. The decision should not be made dependent, in whole nor in part, on the sufficiency of the guardian's general bond.

Holden, C. J., did not participate in the decision in this case.

ON PETITION FOR REHEARING.

(July 7, 1938.)

PER CURIAM.—Petition for rehearing has been filed and we have given it a careful examination. While it states many of appellant's propositions in a somewhat different form, it is in substance to the same effect as urged in appellant's original and reply briefs. We are satisfied with the construction we have placed on the statutes involved and for that reason think it unnecessary to further advert to the statutes.

The contention that appellant was defrauded by reason of the failure of the guardian to require payment of the $2,000 bid for the property, and that respondent bank is chargeable with notice thereof, is perhaps correct as to the guardian and the purchaser at guardian's sale, but is not sound as to the Federal Land Bank. Of course it was a fraud for the guardian to represent that he had received the $2,000, whereas he had only taken an unsecured promissory note for the same. That was a fraud upon the court and the ward as well; but the ward had his remedy for collection of this $2,000 against the guardian and the guardian's surety, and the purchaser as well. In the face of this state of facts, the present action was instituted against the land bank and the guardian and the purchaser at guardian's sale; and yet no service was made on the guardian nor upon the purchaser,

although they were both present in court during the trial in this case and one of them testified on the trial. The guardian's surety was not brought in as a party defendant and apparently no action has been prosecuted against the surety. On the other hand, the land bank had no notice, either actual or constructive, of the foregoing facts.

At the time the bank made the loan, on which it subsequently foreclosed, the ward's property was covered by pre-existing mortgages which, in the aggregate, amounted to more than the amount of the loan secured from the Federal Land Bank in payment for which such loan was used. In other words, the money obtained from respondent was used entirely for the payment of mortgages then existing against this same property. If the appellant were allowed to have the deed given on foreclosure sale set aside, the land bank would undoubtedly in equity be entitled to subrogation to the rights of the previous mortgagee, the Union Central Life Insurance Company, which held the mortgages on this same property. Under these circumstances, there is no law and no equity that would permit appellant to take the benefit of the payment of the pre-existing mortgage indebtedness without doing equity with the party that furnished the means with which to pay such indebtedness. In so far as respondent is concerned, this is clearly not a case where a ward is being swindled and cheated out of his property by a money lender overreaching him or his guardian.

Petition for rehearing is denied.

MORGAN, J.—I adhere to the views expressed in my concurring opinion heretofore filed.